# REPUBLIC OF HAWAII *v.* SAGATA TSUNIKICHI.

## EXCEPTIONS FROM CIRCUIT COURT, SECOND CIRCUIT.

SUBMITTED FEBRUARY 1, 1898.    DECIDED FEBRUARY 28, 1898.

### JUDD, C.J., FREAR AND WHITING, JJ.

(1)  On a motion to exclude witnesses from the court, it is not error for the court in its discretion to allow the sheriff and deputy sheriff to remain in court to attend to their official business, although they expected to be called as witnesses to some facts observed by them after the crime had been accomplished.

(2)  Where two persons, A. and B., had been killed by the same person at the same time and under the same circumstances, it was competent to admit evidence of the killing of B. as a part of the *res gestae*, although the killing of A. was alone charged in the indictment.

(3)  It was not error to refuse to charge that the act of killing, the weapon or means used or other facts and circumstances surrounding the homicide, may not afford presumption of the degree of murder, and that additional proof of deliberation, premeditation or reflection must be shown in order to establish a higher degree of guilt than murder in the second degree.

(4)  The court charged as follows: "It is not necessary that a deliberate, premeditated intention should be formed and matured before the occasion upon which the crime was committed. If executed the moment such intention is formed, if such deliberate premeditated intention was in fact formed, the murder is murder in the first degree." "While presumptions of malice are necessarily presumptions of murder, because all malicious killing is murder, they are not presumptions of murder in the first degree and such presumptions justify conviction in the second degree only, *unless* the

weapons used or the means used or other facts and circumstances surrounding the killing and connected with it show that the killing was in fact with deliberate, premeditated malice or with extreme atrocity or cruelty. Deliberate, premeditated malice or else extreme atrocity or cruelty must be proved by the evidence in order to justify a verdict of murder in the first degree."

*Held,* that the above charge fairly states the law on this subject.

(5) There was evidence in this case from which the jury could find that the murder was committed with "deliberate premeditated malice aforethought" or "with extreme atrocity or cruelty" or both.

(6) Where several counts in the indictment merely describe the same offense as having been done in different ways, it is not error for the court to refuse to require the prosecution to elect upon which count they will proceed.

### OPINION OF THE COURT BY JUDD, C. J.

The defendant was convicted in the Circuit Court, Second Circuit, of murder in the first degree. On the representation that he was unable to employ counsel, the court appointed Charles Creighton, Esq., to defend him.

The case for the prosecution is as follows: The defendant, a Japanese, had a wife of the same nationality named Otsuru or Octuro, and a child about three years old. This family had moved to Wailuku from Spreckelsville where defendant had been employed. On Saturday, the 24th of July last, Otsuru left their home with her child and went, as her husband the defendant says, ostensibly to have a tooth pulled. Defendant towards night, his wife not returning, went in search of her, first to the doctor's and then to one Mashida's house in Waikapu. and, on being told that she was not there but was at a house nearby in which one Keota lived, he returned to his home, and early Sunday morning appeared at the door of Keota's house in which were Keota and Araki, Japanese, and Otsuru and her child all sitting about a small table drinking coffee. Defendant said "Good morning." Keota replied and asked him to join

them. The child seeing its father called out "papa, papa" and ran to defendant who took her up in his arms and called his wife to come outside and went out carrying the child, she following him. In a few moments Keota and Araki, still in the house, heard the parties out door talking, followed by a loud scream from the woman. They rushed out and saw the defendant standing over his prostrate wife, stabbing her repeatedly with a long knife. She was covered with blood. As Keota and Araki tried to interfere defendant flourished his knife at them and they ran back a few yards. Keota on coming up again to the parties found the child with its throat cut and both the woman and the child dead. Defendant immediately cut his own throat and when the neighbors and officers came running to the scene, defendant was lying on the ground, insensible. Keota then ran off to telephone for the officers. Araki had run off altogether and did not return until the crowd came up. Defendant was taken to the hospital and his wounds were sewed. The front tissues of the woman's neck were completely severed to the back muscles. She had several other deep wounds, one near the armpit, one in the abdomen, one in the back and both her hands were nearly cut off. The child's head was severed from its body, only a shred of skin retaining it. The knife used was a Japanese knife with a very sharp blade about nine inches long, from its appearance not made for domestic use, but a weapon of offense or defense. A wooden sheath in which this knife was carried was found on defendant's person, thrust into his trousers at his side and held by a sash. The knife was taken from defendant after a struggle by a native who lived nearby and ran to the scene seeing the Japanese running away. There is some evidence that on that Saturday night defendant had asked a Japanese friend to try and sell his wife for $75 and that he said she had run away and he was trying to find her. Araki says that while he was at Mashida's house in Waikapu, the Saturday evening before the murder, the woman Otsuru and her child came there, walking, and asked him for sleeping accommodations for the night, saying that she

had had a fight with her husband. There is some conflict of testimony as to whether Mashida was aware of this request. He was attending his sick wife at the time. But it is not disputed that Araki took Otsuru and her child to Keota's house nearby and that Keota took them in and gave up his bed to them, he sleeping in another room. Araki says that after seeing the woman and child provided for at Keota's he went back to Mashida's house and only returned to Keota's very early the next morning and then got Keota to buy coffee for the party which they were drinking when defendant made his appearance as above narrated. From these actions it was urged by defendant's counsel that defendant had reasonable grounds to suspect his wife of undue intimacy with Araki, but if it was so it is remarkable that defendant showed no hostility to Araki. What the conversation was between defendant and his wife may never be known and is only the subject of conjecture. At any rate, Keota says that it was *"very soon"* after they went out of the house that he heard the woman scream.

The first exception is to the court's allowing, under objections by defendant's counsel, the sheriff and deputy sheriff, to remain in court during the trial although they expected to be called as witnesses. They testified to certain facts observed by them after the homicide. Their presence in court assisting the attorney general in this case and in the general business of the term, was deemed necessary. It was within the discretion of the court to exclude them or not and we cannot see how their presence worked any injury to the defendant. We overrule this exception.

The second exception is to the court's allowing the introduction of evidence as to the killing of the child, the indictment charging defendant with the killing of Otsuru alone and not the child. This evidence was clearly admissible as being a part of the *res gestae.* It was a fact connected with the killing of the woman and forms part of one transaction and illustrates its character and by reason and upon authority it could not be properly excluded.

1 McLean, Cr. Law, Sec. 411;

Kerr, Homicide, Sec. 426;

*People v. Foley*, 64 Mich. 148;

*Brown v. Com.*, 76 Pa. St. 319.

The statutory definition of murder in the first degree is as follows:

Section 37. Murder is the killing of any human being with malice aforethought, without authority, justification or extenuation by law, and is of two degrees, the first and second, which shall be found by the jury.

Section 39. Murder committed with deliberate premeditated malice aforethought, or in the commission of or attempt to commit any crime punishable with death, or committed with extreme atrocity or cruelty is murder in the first degree.

The third exception is to the court's refusal to charge in behalf of defendant as follows:

Instruction 8. "While presumptions of malice are necessarily presumptions of murder, because all malicious killing is murder, yet a presumption of malice either from the act of killing, the weapon or means used, or from other facts and circumstances surrounding the homicide, raise no presumption as to the degree of murder, and consequently no presumption that the homicide is more than the lowest degree of malicious killing, which is usually murder in the second degree; but a higher degree of guilt can be established only by additional proof of deliberation, premeditation or reflection." This instruction is erroneous. The jury may find deliberation and premeditation from the nature of the act of killing or from the means used or from other facts and circumstances surrounding the act. Scarcely ever does an accused express audibly that he had formed his purpose to kill, having deliberated and premeditated it. A man's mind may be shown by his act.

The court in place of this requested instruction, charged as follows: "It is not necessary that a deliberate premeditated

intention should be formed and matured before the occasion upon which the crime was committed. If executed the moment such intention is formed, if such deliberate premeditated intention was in fact formed, the murder is murder in the first degree." Also the following: "While presumptions of malice are necessarily presumptions of murder, because all malicious killing is murder, they are not presumptions of murder in the first degree, and such presumptions justify conviction in the second degree only, unless the weapons used or the means used or other facts and circumstances surrounding the killing and connected with it show that the killing was in fact with deliberate premeditated malice or with extreme atrocity or cruelty. Deliberate premeditated malice or else extreme atrocity or cruelty must be proved by the evidence in order to justify a verdict of murder in the first degree."

The instruction given was correct. In *Aszman v. State*, 123 Ind. 347, the court says in discussing the difference between the two degrees of murder: "It is sufficient to say that in order that there may be such premeditated malice as will make a homicide murder in the first degree, the thought of taking life must have been consciously conceived in the mind; the conception must have been meditated upon, and a deliberate determination formed to do the act. Where a homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneously as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree."

To the jury was left the duty of finding whether the defendant committed the act with deliberate premeditated malice aforethought, or not. The possession and use by defendant of the knife, which was evidently a warlike weapon and not one intended to be used for domestic or personal purposes, extremely bright and sharp, was an important item in the case. The jury was not called upon to render a special verdict whether the

killing was with deliberate premeditated malice aforethought or in case they did not find premeditation to find whether they found the killing was done with extreme atrocity or cruelty, and we cannot tell which ingredient they did find. It was left to them to find either or both. We find evidence that would authorize the jury to find either or both.

Another exception is to the refusal of the court to order the prosecution to elect upon which count or counts of the indictment they would go to trial and ask for conviction. This was not error. The different counts merely charge the same offense in different ways. This is proper in order "to adapt the pleadings to the different aspects in which the evidence on the trial may present a single transaction." Bishop's New Crim. Procedure, Sec. 457, note. *Com. v. Webster*, 5 Cush. 295.

The exceptions are overruled.

*Atty.-Gen'l W. O. Smith* for prosecution.

*Chas. Creighton,* assigned by the Court, for defendant.