JOSEPH GAROFOLA v. STATE OF NEBRASKA.

FILED NOVEMBER 5, 1931. No. 28015.

*S. L. Winters,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

Defendant was tried and convicted on a charge of assault with intent to inflict great bodily injury upon Joseph C. Campsey. From a sentence for the minimum of one year (Comp. St. 1929, sec. 28-413), he brings proceedings in error.

The assignments of error raise only one question. Were sufficient facts and circumstances shown in the evidence to authorize the jury to infer that the defendant had the specific intent to inflict great bodily injury?

The defendant lived at 1223 South Fourteenth street, Omaha, in a block bounded on the north by Pierce street and on the south by Williams street. East of his lot was a paved alley. It was described as a "one-way alley, a blind alley." It extends south some distance from the regular east and west alley which runs from Thirteenth street to Fourteenth street. On the northeast part of this lot he had a double cement garage with double doors opening on the alley and locked from the inside. On the west was a single door fastened with a padlock. This garage extended only to within about four feet of the alley. He had paved this strip and had built a curb or low wall north of the garage on his north line. His garage had been robbed several times and he had installed an electric device so that when the small garage door was opened and the contact broken it would ring a bell in the house. Fourteenth street is west of Thirteenth street.

The evidence on behalf of the state shows: On February 6, 1931, Joseph C. Campsey, a paperhanger, and H. P. McLaughlin, his helper, were hanging paper for a party at Thirteenth and Pierce streets. About 11:15 they quit work to stop at a place adjacent to the blind alley at the request of a party living there to look at a job and give her a figure on it, and then to go to lunch. They went south on Thirteenth street, west on the main alley and south about 100 feet to a point in the blind alley near defendant's garage, where they came upon Clarence Ransom, a negro laborer, who had been sitting on defendant's wall or curb, sunning himself, as he testified. He lived farther south on the alley and the sun did not strike his place. Campsey had formerly lived next door to defendant and now lives four blocks away and he and McLaughlin knew Ransom. All three were standing in the alley talking. The others had told Ransom they were going down to see about another job, and McLaughlin was asking Ransom how his wife, who was sick, was getting along, when Garofola came up behind Campsey and struck him a severe blow in the ribs with a club. This club was twenty inches long and about five inches in circumference at the small

end and about nine inches in circumference at the larger end. It is of hard wood, unpeeled. Nine branches or twigs have been cut from it, but not close to the club, so that it is a weapon with which one would not choose to be hit. Defendant struck Campsey a second blow, across the kidney, threatening in profane language to kill him, and then struck a third blow at Campsey's head, but he dodged and received the blow on his shoulder. After hitting Campsey the second time, McLaughlin, who knew defendant, said to him, "What's the matter with you, Joe," and defendant struck McLaughlin on the head and "knocked him cold, he didn't know anything." Campsey and Ransom broke and ran east through a gate and defendant chased them to Thirteenth street. Campsey was taken to St. Catherine's Hospital that evening and was there for thirteen days under the care of an Omaha police surgeon, who testified that he believed the patient had a ruptured kidney and a fracture of the ribs, that at first he had black and blue marks on the lower left chest, and that a blow from the club in evidence could produce the ruptured kidney. The physician also believed there was an injury to the stomach. Campsey and Ransom testified that defendant said nothing before beginning the attack.

Defendant's daughter testified that the electric bell rang in the dining-room, and she called her father, who got up and went out. She remained in the house and did not see any of the trouble. Defendant's tenant, who used part of the garage, testified that he drove into the alley just as defendant came out of his yard into the alley and that two of the men were right up against the doors of the garage.

Defendant testified that his locks had been broken six times. When he went out on his daughter's notice he found the lock of the small door on the west side broken and lying on the ground. Then he went to the alley and saw three fellows by the garage, asked them what they were doing there, one of them "near jumped on him," and he went back into the yard and got the stick to protect himself; he had never had any trouble with them before but thought they were the ones who had broken into his garage; he had been ill with the flu for eighteen days and

had a rupture for which he was operated on ten days later at the hospital; and that they were on his property when he told them to leave.

Defendant requested, among other things, instructions in relation to defendant's right to use force against trespassers on his property and to defend himself by force against an assault on his person. The court refused these in the form presented but, on his own motion, instructed the jury on these phases. The court also instructed the jury that the crime of assault with intent to inflict great bodily injury also includes the charge of assault and battery, carefully instructed them on that offense, and furnished them three forms of verdict—one of guilty on the major charge, one of guilty on the minor charge, and third, of not guilty as charged in the information. The instructions are not the subject of any error assigned.

The statute involved here is of the same type and requires the same proof of intent as the statute (Comp. St. 1929, sec. 28-410), on shooting with intent to kill. We recently decided a case involving the latter statute adversely to the contention of the appellant on the very point in question here. *Swartz v. State, ante,* p. 696. In that case we affirmed certain rules of law which are fitting here, and as applied to this case may be stated as follows: Intent is an essential element in the crime of assault with intent to inflict great bodily injury and proof of such intent is indispensable to sustain a conviction. *Botsch v. State,* 43 Neb. 501; *Ward v. State,* 58 Neb. 719; *Clary v. State,* 61 Neb. 688; *Garrett v. State,* 110 Neb. 118. Where such specific intent is an essential element of the crime, such intent is inferable from the facts and circumstances, inclusive of the assault. *Ward v. State,* 58 Neb. 719; *Clary v. State,* 61 Neb. 688; 16 C. J. 81, 116.

Applying these rules to the facts in evidence, we are of the opinion that the trial court did not err in submitting the case to the jury, and that the facts were such as to authorize the jury to find that the defendant intended to inflict great bodily injury. Therefore, the judgment of the district court is

AFFIRMED.