STATE OF NEBRASKA, PLAINTIFF IN ERROR, v. GLEN
McDANIELS, DEFENDANT IN ERROR.

16 N. W. 2d 164

FILED OCTOBER 20, 1944. No. 31840.

*Kelso Morgan, C. E. Walsh* and *Theodore L. Kowalski,* for plaintiff in error.

*Eugene D. O'Sullivan, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

As provided by and in conformity with sections 29-2314, 29-2315, and 29-2316, Comp. St. 1929, permission was given the county attorney of Douglas county, Nebraska, to file a bill of exceptions in this court, and by such special proceedings obtain decision of certain questions of law which will hereafter govern prosecutions for violations of section 28-413, Comp. St. 1929.

The record discloses that a complaint, substantially in the language of the statute and in conformity with law (See *Smith v. State,* 58 Neb. 531, 78 N. W. 1059; *Alyea v. State,* 62 Neb. 143, 86 N. W. 1066), was filed in the municipal court for Omaha, Douglas county, Nebraska, charging defendant with the crime of assaulting another (Larry Reiss), with intent to inflict great bodily injury upon him.

After preliminary hearing defendant was bound over to the district court for trial. Thereafter an information, likewise substantially in the language of the statute, was filed in the district court. Upon defendant's plea of not guilty the cause proceeded to jury trial.

At the conclusion of the state's evidence counsel for defendant moved that the trial court dismiss the case or in lieu thereof instruct the jury to bring in a verdict of not guilty for the reasons, in so far as they are here involved, that the evidence did not sustain the allegations of the information, and was not of sufficient probative force to prove defendant's guilt beyond a reasonable doubt, as provided by law. The trial court thereupon sustained the motion solely upon the ground that there was no evidence of specific intent to commit the crime charged. The question for decision is whether the trial court erred in so doing. The answer is in the affirmative.

As provided by section 29-2316, Comp. St. 1929, this opinion can in no manner reverse or affect the defendant's case. The purpose of sections 29-2314, 29-2315, and 29-2316, Comp. St. 1929, when applied in cases like the one at bar, is solely to obtain authoritative expositions of the law to be used as precedent and govern in similar cases then pending or those accruing thereafter, and thereby be of service to the state, the courts, and lawyers, by obtaining a uniform administration of criminal laws in all jurisdictions of the state.

In this connection the rule is that ordinarily in such appeals by the state from dismissal of the case or a directed verdict in favor of accused for the sole reason that the evidence is insufficient to establish the charge, the supreme court will not review the record to determine the correctness of the decision since a factual situation could rarely benefit any one or serve any good purpose in governing similar cases then pending or those arising thereafter. 24 C. J. S., sec 1663, p. 262; *State v. Wickett*, 230 Ia. 1182, 300 N. W. 268.

Therefore, as a rule in such cases this court will not or-

dinarily determine the facts, but it will determine the proper rules of law applicable to the facts. In the case at bar the trial court dismissed the charge solely upon the ground that there was no evidence of specific intent to commit the crime charged. In that respect it is similar to the case of *State v. Woodruff*, 208 Ia. 236, 225 N. W. 254, and presents a question of law for decision by this court.

The evidence of the four witnesses who testified for the state fairly discloses the following: Larry Reiss, complainant, who lived at 2715 Jackson street, Omaha, Nebraska, was a switchman for the Union Pacific Railroad Company. On August 3, 1943, he worked until midnight, arriving at his apartment about 1 o'clock a. m. It was hot in his bedroom and he went out on the porch where he sat down in an armchair with his feet upon the porch railing. Defendant, Glen McDaniels, a passing acquaintance, who lived in the next-door apartment, was also on the porch reclining in a bed-like chair and apparently asleep. Defendant, although not disturbed by complainant, shortly thereafter began an argumentative conversation concerning a paint job which he had undertaken for the landlady, upon which he sought an opinion from complainant relating to a controversial price. Complainant informed defendant that it was nothing with which he was concerned and attempted to avoid the argument, after which defendant became loud, profane, abusive, and vulgar; whereupon a next-door neighbor asked him to "pipe down." Defendant then invited the neighbor to come out and he "would show him how tough he was." Going into his own apartment defendant came out with a hammer and said, "I will fix that guy when he comes out." He thereafter walked to and fro behind the sitting complainant, swinging the hammer and continuing to attempt provocative argument with him. Finally defendant asked complainant, "How would you like to have your head bashed in and sewed up again?" and all of a sudden, without warning, and while complainant sat in the chair with his hands in his lap, defendant struck complainant over the right eye with the hammer and when com-

plainant raised up out of the chair defendant struck him in the jaw with his fist, almost knocking him over the porch railing. Complainant was temporarily unconscious but upon recovering his faculties discovered his bleeding wound, and remembers that defendant then asked him whether he "had had enough." The police were called and investigation followed. Defendant was taken to jail and complainant to a doctor. His wound was sutured with three stitches and he was removed to a hospital where he remained for one week. The police found the hammer under defendant's icebox. Defendant admitted to police that the hammer belonged to him but told the officers that complainant pulled a knife and defendant hit him with the hammer. No knife was found by the officers upon complainant's person or about the premises, and he asserts that he had none. About two weeks before the trial complainant met defendant upon the street and defendant told him that, "he was sorry for the way it turned out, * * * his temper just got the best of him * * * ." A depression above complainant's right eye where he was struck with the hammer was plainly visible in court at the trial more than six months after the injury was inflicted.

These facts and circumstances appearing in the evidence should have required submission of the question of defendant's intent to the jury for their determination under appropriate instructions given by the trial court.

At the outset contention is made by the state, without citing authorities, that defendant's motion to dismiss is not specifically directed to nor inclusive of the question of intent. Of course, "Intent is an essential element in the crime of assault with intent to inflict great bodily injury and proof of such intent is indispensable to sustain a conviction." *Garofola v. State*, 121 Neb. 850, 238 N. W. 755. We must therefore find that the motion to dismiss is inclusive of the question of intent.

This court has consistently defined "great bodily injury" in the following language: "The term 'great bodily injury,' as employed in the Criminal Code is not susceptible

of a precise definition, but implies an injury of a graver and more serious character than an ordinary battery; and whether a particular case is within the meaning of the statute is generally a question of fact for the jury." *Hallett v. State,* 109 Neb. 311, 190 N. W. 862. As early as *Murphey v. State,* 43 Neb. 34, 61 N. W. 491, the court said: "It is not essential to a conviction for the offense charged that the accused should have intended the precise injury which followed as the result of the assault. It is sufficient if serious bodily harm of any kind was contemplated. (*People v. Miller,* 52 N. W. Rep. (Mich.) 65.) True, the injury, however serious, would not of itself authorize a conviction under the statute, and may for the purpose of this prosecution be regarded as immaterial, except so far as it tends to explain the motive of the accused. But where the injury proved is the natural and necessary consequence of the deliberate and inexcusable act of the accused, the inference is that it was the result contemplated by him when the assault was committed, and may be sufficient evidence of the specific intent which is essential to a conviction. Such inference or presumption is, however, one of fact merely; and while the jury may convict without other proof of the intention alleged there is no obligation resting upon them to do so unless satisfied thereof beyond a reasonable doubt." As was also held in *Lambert v. State,* 80 Neb. 562, 114 N. W. 775, "It is not essential to a conviction for such offense that the accused should have intended the precise injury which followed. It is sufficient if it be shown, beyond a reasonable doubt, by the circumstances under which it was inflicted, together with its nature and extent, that great bodily injury was contemplated by the defendant when he made the assault." It was held in *Clary v. State,* 61 Neb. 688, 85 N. W. 897, that, "The intent with which an act is done is inferable from the act itself, and from the facts and circumstances surrounding it." In that case this court also approved the general rule that the intent with which an act is done is a mental process, and as such generally remains hidden within the mind where it is conceived, and is

rarely, if ever, susceptible of proof by direct evidence, but may be inferred or gathered from the outward manifestations, by the words or acts of the party entertaining them, and the facts or circumstances surrounding or attendant upon the assault with which it is charged to be connected. Likewise, in *Hallett v. State, supra,* "The intent with which an assault is made may be inferred from the facts and circumstances surrounding the performance of the act." Also, in *Garofola v. State, supra,* "Where such specific intent is an essential element of the crime, such intent is inferable from the facts and circumstances, inclusive of the assault." This case refers to and relies upon *Swartz v. State,* 121 Neb. 696, 238 N. W. 312, wherein it was said, in quoting from *Ward v. State,* 58 Neb. 719, 79 N. W. 725, "It (the intent) may be gathered or drawn from all the evidence, facts, and circumstances of the case, inclusive of the act, and is a matter of fact for the consideration and decision of the jury." Applicable rules are also stated in 22 C. J. S., sec. 35, p. 93, by use of the following language:

"It is a general rule, applicable in all criminal cases, including those where a specific intent is an element of the crime, that accused, if sane, is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary acts, knowingly performed. * * *

"The presumption is rebuttable, at least in cases where a specific intent is an element of the crime. The presumption is sufficient to establish a prima facie case as to intent and will prevail unless from a consideration of all the evidence the jury entertain a reasonable doubt whether such intention existed."

Therefore, without reversing or in any manner affecting the judgment of the trial court dismissing the defendant in the instant case, we are required to find, after a consideration of applicable law, that the action of the trial court in sustaining the motion to dismiss, for the reason that there was no evidence of specific intent to commit the crime charged, was erroneous. The exceptions of the state should have been and they are hereby sustained.

EXCEPTIONS SUSTAINED.