STATE OF HAWAII *v.* EDWARD A. SORENSON.

No. 4157.

JANUARY 27, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS, JJ., AND
CIRCUIT JUDGE MCKINLEY ASSIGNED BY
REASON OF VACANCY.

OPINION OF THE COURT BY WIRTZ, J.

Defendant was charged with assault and battery with intent to disfigure one Arline Ida Murray contrary to Section 264-3(b), Revised Laws of Hawaii 1955. Said incident is alleged to have occurred on November 30, 1958, in the City and County of Honolulu.

On June 3, 1959, after a trial by jury, defendant was found guilty as charged. This case is now before this court upon defendant's Writ of Error to the judgment and sentence entered on July 17, 1959, based on his exception to the verdict of the jury as being contrary to the evidence. Defendant specifies as error that "there was manifest, material and prejudicial error in the verdict of the jury finding Defendant, Plaintiff-in-Error guilty as charged as the evidence adduced was insufficient as a matter of law to premise said verdict."

This specification raises the sole question on appeal as to whether there was sufficient evidence for the jury to find defendant guilty of a violation of Section 264-3(b), Revised Laws of Hawaii 1955, as charged.

The amended indictment filed on April 2, 1959, charged that defendant "on the 30th day of November, 1958, unlawfully, intentionally, and maliciously with a razor blade

did inflict linear lacerations under each breast and scratches over the pubic region in the form of initials on the body of Arline Ida Murray, with intent to disfigure the said Arline Ida Murray, and did then and there and thereby commit the offense of Assault and Battery with the intent to disfigure, contrary to the form of the statute in such case made and provided." Section 264-3(b), Revised Laws of Hawaii 1955, which is the basis of this charge, reads as follows:

"§ 264-3. Aggravated offenses. Whoever commits an assault or a battery

"* * *

"(b) With intent to maim or disfigure another, * * *

"* * *

"* * * shall, unless a greater penalty is otherwise provided by law, be fined not more than $5,000 or imprisoned at hard labor not more than ten years, or both."

Defendant contends that Section 264-3(b), Revised Laws of Hawaii 1955, is descriptive of but one offense, that of "maiming and disfiguring"; and that since "many modern statutes discard the term 'mayhem' replacing it with the term 'maiming'" the present charge, although stated in the language of "disfiguring" must be interpreted together with the common-law definitions of "mayhem," such as "dimunition of corporal abilities," "permanent loss of limb," or "disability of parts of the human anatomy," all of which connote the feature of permanence in the injury resulting in disfigurement.

On the other hand, the State contends that Section 264-3(b), Revised Laws of Hawaii 1955, describes two separate offenses "assault and battery with intent to maim" or "assault and battery with intent to disfigure."

We are inclined to the view that the statute describes

but one offense of assault and battery which may be consummated by alternative means or in different ways. The offense is aggravated assault committed either with "intent to maim" or "with intent to disfigure."

The use of the disjunctive "or" in the statute is significant. Although it is true that under proper circumstances "or" may mean "and" (R.L.H. 1955, § 1-23), the common usage of the word "or" is as a disjunctive, indicating an alternative. It usually connects words or phrases of different meanings permitting a choice of either. 50 Am. Jur., *Statutes,* § 281, p. 267; *McSweeney* v. *Bazinet,* 55 N.Y.S. 2d 558, 269 App. Div. 213; *Chicago Catholic Workers' Credit Union* v. *Rosenberg,* 346 Ill. App. 153, 104 N.E. 2d 568; *Commonwealth ex rel. Shumaker* v. *New York & Pennsylvania Co.,* 367 Pa. 40, 79 A. 2d 439.

*Black's Law Dictionary,* Fourth Edition, defines "maim" and "disfigurement" in the following language:

> "MAIM. As now used signifies to cripple or mutilate in any way, to inflict upon a person any injury which deprives him of the use of any limb or member of the body, or renders him lame or defective in bodily vigor; to inflict bodily injury; to seriously wound or disfigure; disable."

> "DISFIGUREMENT. That which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner."

The foregoing definitions suggest such a substantial difference in meaning that it would be more logical to interpret the word "or" in the disjunctive sense. rather than the conjunctive.

*"In penal statutes,* the word 'or' is seldom used other than as a disjunctive, * * *." The rule as to the interchangeability of "or" and "and" is inapplicable to the

offense described in R.L.H. 1955, § 264-3(b). 82 C.J.S., *Statutes*, § 335, p. 675. *Cf., State* v. *Benjamin,* 102 Ohio App. 14, 132 N.E. 2d 761.

A reading of Section 264-3(b), Revised Laws of Hawaii 1955, discloses that it provides for the offense of assault and battery with two separate means of accomplishment, a form of aggravated assault which has no technical and definite common law meaning. *Cf.,* 6 C.J.S., *Assault and Battery,* § 73, p. 925.

Section 264-3(b) was enacted by the 1949 Territorial Legislature as a part of an extensive revision of the laws relative to criminal assault and battery. In revising the *Penal Code of the Hawaiian Kingdom, 1869,* the Legislature intended to enlarge the scope of the existing offense and remove some of its restrictions or limitations in application.

Chapter IX, Sections 3 and 4, *Penal Code 1869* (R.L.H. 1945, §§ 11052, 11053) read in part as follows:

"3. Whoever with malicious intent to maim, or disfigure, *or mutilate, shall cut out or maim the tongue, put out or destroy an eye, cut or tear off an ear, cut or slit or mutilate the nose or lip, or destroy or disable any limb, member or bodily organ of another,* shall be punished * * *.

"4. Whoever shall assault another, with intent to murder, or to maim or disfigure his person in any of the ways mentioned in the preceding section, shall be judged guilty of assault in the first degree, and shall be punished * * *." (Emphasis added.)

The deletion of the words above emphasized from the Penal Code in the 1949 revision is significant in that it shows the legislative intent of extending the offense of assault and battery involving disfigurement beyond the confines of the old common law understanding of the term "mayhem," by the removal of the restrictions limiting the

commission of the offense to the destruction, mutilation or impairment of specified functional bodily members or organs.

A review of the Senate Journal 1949, at page 1098, discloses that it was the purpose and intent of the legislature to "broaden and clarify the definition of assault and battery, in line with the most modern criminal statutes of other jurisdictions," and to "substitute for the present confusing assortment of criminal provisions covering aggravated crimes against the person * * * a comprehensive and simplified provision covering aggravated offenses involving assault or battery."

The jury in this case were instructed without objection and by agreement, that "the word 'disfigure' as used in these instructions is defined as follows: To impair or injure the beauty, symmetry, or appearance of a person or thing; to render unsightly, misshapen or imperfect, or to deform in some manner." This was in accord with the generally accepted definition of the term disfigure. *Cf.,* 12A Words and Phrases, Permanent Edition, *Disfigurement,* pp. 408-410; *Black's Law Dictionary,* Fourth Edition, *supra;* 27 C.J.S., *Disfigure,* p. 309; *Murdaugh* v. *Robert Lee Const. Co.,* 185 S.C. 497, 194 S.E. 447, 452.

Focusing our attention on the particular phase of the evidence to which this instruction was applicable as a guide to the jury, we find it shows that the defendant did inflict linear lacerations under each breast and cuts over the pubic region of Arline Ida Murray. Clifton Ohashi, a photographer and member of the Honolulu Police Department, testified that he observed in the pubic area of the complainant the initials "E.S." in capital English letters "carved on with the use of some instrument" not with ink or crayon or pencil but "etched" and "a very slight horizontal line of injury" on the breasts which he characterized as "cuts."

Mrs. Arline Ida Murray, on direct examination, testified as follows:

"Q  What did he do with the razor blade?
A  He started slicing on my body.
Q  What part of your body did he start to slice?
A  Lower abdomen.
Q  Could you see what he was slicing?
A  No. I could feel what he was slicing.
Q  What did this slicing feel like?
A  Burns—sting.
Q  How long did you feel these burns, stings, on your lower abdomen?
A  Every time he cut another slash in it.
Q  How many times did he cut these slashings on your lower abdomen?
A  He cut his initials. It was one, two, three, on the letter 'E' and one, two, three, four, on the letter 'S', I believe."

And, at the time of trial, on cross-examination, Mrs. Murray testified that she still had the scars from the slashes under her breasts and the imprint of the initials carved on her body.

Finally, Officer Jacob Yoon, member of the Honolulu Police Department, testified that he observed the initials "E.S." in the pubic area of Mrs. Murray which he described as "superficial lacerations and appeared to have been made by a sharp instrument such as a razor blade or knife."

Corroborative evidence is found in Prosecution's Exhibits 1-A, 1-B, 1-C and 1-D, which are photographs clearly depicting the injuries above described.

The defendant contends that the foregoing evidence was insufficient to prove intent on the part of the defendant to disfigure the complainant as the injuries were of a non-permanent character. However, the evidence showed that the "carvings" on the complainant's body were still

present at the time of the trial some six months later, indicating a degree of permanence in the character of the injuries sustained.

The defendant is not charged with "disfiguring," but with assault and battery "with intent to disfigure." The "intent to disfigure" is an essential part of the offense. It has been held that the "intent with which an act is done is a mental process, and as such generally remains hidden within the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence, but may be inferred or gathered from the outward manifestations, by the words or acts of the party entertaining them, and the facts or circumstances surrounding or attendant upon the assault with which it is charged to be connected." *State* v. *McDaniels,* 145 Neb. 261, 16 N.W. 2d 164, 168; quoted with approval in *Kirkendall* v. *State,* 152 Neb. 691, 42 N.W. 2d 374, 377; *Cf., Application of Ralls,* 71 Nev. 276, 288 P. 2d 450; *Territory* v. *Palai,* 23 Haw. 133; *Territory* v. *Wright,* 16 Haw. 123; *Republic of Hawaii* v. *Tsunikichi,* 11 Haw. 341.

The jury had before it the story of a long established illicit relationship between the parties during which they lived together as husband and wife. Added to this background, the evidence revealed that the defendant and the complainant had been out "carousing" the night before, after which and upon returning to their apartment defendant had ordered her to appear in the nude for the benefit of a guest. After this display she was permitted to put on a nightgown but upon the departure of the guest he again forced her to strip and lie down on the bed while he tied her hands so that he could proceed uninterrupted with his carving.

While in the act of cutting the body of Mrs. Murray, the defendant made declarations which were an outward manifestation of his intent:

"Q When he sat on top of your feet, what did he say to you?

A He said, 'This is going to hurt you. And if you scream, I am going to kill you.'
* * *
Q What did—did he respond when you pleaded and begged?

A Not very much. He said a few things. He kept saying, 'It hurts you, doesn't it?' He said again, 'If you scream, I am going to kill you.'

Q How did you feel when this was going on?

A Terrified.

Q Now, after he sliced in the area of your abdomen, what next happened?

A He said he was going to put two more cuts on me. That is when he sliced.

Q What language did he use?

A 'I am going to put two more cuts on you.' "

The defendant attempts to dismiss this sadistic attack lightly and to minimize the injuries by characterizing them as "superficial skin 'lacerations' and 'scratches'." However, the defendant does admit that "the evidence is undisputed that whatever disfigurement was made was done with leisure and deliberation." The nature of the injuries and the leisurely and deliberative manner in which they were inflicted coupled with defendant's declarations clearly provides the basis upon which the jury could find that the assault and battery was committed with "intent to disfigure."

The question of whether defendant did commit assault and battery with intent to disfigure was one of fact for the jury. "To convict a person of an aggravated assault and battery, the act must have been committed by him with the specific malicious intention which gives character to the act and aggravates the assault. The intent in such

cases is a question of fact for the jury, and the malicious intention is to be inferred from the situation of the parties, their acts and declarations, the nature and extent of the violence, and the object to be accomplished." 4 Am. Jur., *Assault and Battery,* § 26, p. 142.

In *Republic of Hawaii* v. *Gallagher,* 9 Haw. 587, 588, the defendant was charged with violating Chapter IX, Section 3, Penal Code: "Whoever with malicious intent to maim, or disfigure, or mutilate, shall cut out or maim the tongue, put out or destroy an eye, cut or tear off an ear, cut or slit or mutilate the nose or lip, or destroy or disable any limb, member or bodily organ of another, shall be punished \* \* \*." This court, in that case, at page 590 held that "the question was properly left to the jury; it was for them to say whether or not Peterson's personal appearance was in fact impaired; they were to judge from the evidence of Dr. Cooper and their own observation of Peterson who was before them as a witness. The charge of the court was very clear and plain on this point. The facts in this case were left entirely to the jury."

It is well-established in this jurisdiction that an appellate court will not disturb the verdict of a jury where there is any substantial evidence, more than a mere scintilla, to support it. *State* v. *Foster,* 44 Haw. 403. A view of the evidence, as above referred to, adequately shows that not merely a scintilla of evidence, but much more of substance, can be found in this case.

Affirmed.

*Greenstein & Franklin* and *Ton Seek Pai* for defendant-plaintiff in error.

*John H. Peters,* Prosecuting Attorney, and *Herbert Tanigawa,* Deputy Prosecuting Attorney, for plaintiff-defendant in error.