JEROME B. McSWEENEY, Appellant, *v.* JOHN BAZINET, as Mayor of the City of Glens Falls, et al., Respondents.

Third Department, May 9, 1945.

J. *Ward Russell*, attorney (*Daniel J. Finn* of counsel), for appellant.

*Harry H. Singleton*, attorney (*Thomas J. McCarthy* of counsel), for respondents other than Florence J. O'Neil.

*Wyman S. Bascom*, attorney for respondent Florence J. O'Neil.

FOSTER, J. Plaintiff appeals from a final judgment dismissing his complaint. He brought the action, as a taxpayer, to have a conveyance of certain real estate, made by the Mayor of the City of Glens Falls to the defendant Florence J. O'Neil, declared null and void. It is the contention of the plaintiff that the sale of such property by the City to the defendant O'Neil was contrary to the provisions of section 23 of the General City Law; also that the members of the Common Council were guilty of a waste of city property and city funds in the consummation of the transaction.

The facts are not substantially disputed. The property in question is located at No. 5 New Street in the city of Glens Falls and was owned, prior to a tax sale, by one Mary Sheehan. It was sold for unpaid taxes at a city tax sale held on November 20, 1940. It is not contended that this sale was not regularly

conducted in all respects. There were no bidders on the sale except the City Chamberlain, who bid on behalf of the City, and the property was struck off to him for the sum of $208.70, this sum being the amount of unpaid taxes for the years 1935 to 1938 inclusive, plus interest, advertising costs and expenses. The City held the property for one year and nine months as required by the City Charter, and thereafter public notice was given that the two-year period of redemption would expire November 20, 1942. The taxes were not paid and the property was not redeemed. The owner was foreclosed of her title and on December 1, 1942, the City Chamberlain deeded the property to the City, and this deed was recorded in the Warren County clerk's office on December 26, 1942.

Some time after the City had acquired title the defendant O'Neil offered the City $250 for the property, accompanying her written offer with a deposit of $100 in cash, agreeing to take a quitclaim deed of the property, and obtain possession herself. On March 24, 1943, at a meeting of the Common Council of the City her offer was accepted unanimously, and the Mayor was authorized to execute and deliver a quitclaim deed to her subject to the approval of the City attorney. Up to this time there had been no other offer received by the City. Several days later the former owner's attorney appeared at a meeting of the Common Council and in her behalf offered a certified check or cash for the sum of $459.29, that being the amount of taxes, interest, penalties and water rent then due. Later the owners made another offer in writing to pay in full all of the taxes assessed against the property. These offers were refused.

Appellant's chief contention is that the City violated the provisions of section 23 of the General City Law. It is provided by paragraph b of subdivision 2 of this section that: " No sale or lease of city real estate or of any franchise belonging to or under the control of the city shall be made or authorized except by vote of three-fourths of all the members of the common council or corresponding legislative body of the city. In case of a proposed sale or lease of real estate or of a franchise, the ordinance must provide for a disposition of the same at public auction to the highest bidder, under proper regulations as to the giving of security and after public notice to be published at least once each week for three weeks in the official paper or papers. A sale or lease of real estate or a franchise shall not be valid or take effect unless made as aforesaid and subsequently approved by a resolution of the board of estimate and apportionment in any city having such a board, and also approved by the mayor. * * * ''

Section 23 of the General City Law however has a saving clause which provides as follows: " The foregoing limitations shall not apply to the exercise by any city of any power now vested in it, where the existing provisions of law determining by whom or in what manner or subject to what conditions such power shall be exercised are not superseded by the provisions of subdivision one of this section; but in such case the exercise of such power shall be subject only to such existing provisions of law, and shall not be limited or restricted by any provision of this section ".

Subdivision 1, which is referred to in the saving clause just quoted, provides: " The powers granted by this act are to be exercised by the officer, officers or official body vested with such powers by any other provision of law or ordinance    *    *    * but no provision of any special or local law shall operate to defeat or limit in extent the grant of powers contained in this act; and any provision of any special or local law which in any city operates, in terms or in effect, to prevent the exercise or limit the extent of any power granted by this article, shall be superseded.    *    *    *."

The City of Glens Falls operates under a special charter. (L. 1908, ch. 29.)   We find nothing in it, relative to the issue at hand, that operates " to defeat or limit in extent the grant of powers " contained in section 23 of the General City Law which we have just quoted.   The charter contains the usual broad powers of control over city-owned property and provides that the corporation may take, purchase, hold, sell and convey real and personal property.   Under section 152 the charter specifically provides for the manner of conducting the sale of land for unpaid taxes as follows: " Each parcel shall be sold at public auction to the highest bidder.   The purchasers on such sale shall pay the amounts of their respective bids to the chamberlain immediately after each parcel shall be struck off.    *    *    * Should there be no bid of the amount due on any lot or parcel of land to be sold, then the chamberlain shall bid in the same for the city, and the city is hereby authorized to acquire said parcels, and the common council shall have the care and control of all such parcels and may lease and sell or convey the same.    *    *    *."

We see nothing in this grant of power that tends to defeat or limit the powers generally granted under the General City Law. It should be noted also that in the saving clause to the General City Law the co-ordinating particle " or " is used, thus indicating that the language is to be construed in an alternative sense. Thus the limitations of the general law are not to apply where

existing provisions of law determine *by whom, or in what manner, or subject to what conditions,* a power of sale is exercised. The charter of the City clearly provides by whom the power of sale is to be exercised in the case of land acquired by the City from tax sales and therefore the limitations in the general law do not apply.

In addition to the foregoing we think that the Legislature never intended the term " city real estate " to apply to lands acquired as the result of tax sales. Such lands are only acquired by the City after the same have been advertised and sold at public auction. It would seem contrary to common sense to require that such lands be twice advertised and twice sold at public auction. Moreover there is a provision in section 23 which requires that if 10% of the voters of a city demand that a proposed sale of city real estate be submitted to the voters, then a general or special election must be held for that purpose. Obviously the Legislature never intended any such cumbersome procedure as a prerequisite for the sale of lands which have been forced upon a city by the failure of owners to pay taxes. We think, therefore, that the term " city real estate " as used in the general law refers only to property which is owned and used for municipal purposes, and that the General City Law does not apply in any event.

The proof in the case failed to show any waste of public funds or property. Although given ample opportunity the former owner did not propose her offer until after a prior offer had been accepted by the Common Council. The City authorities could not back and fill on such a proposition, and invite litigation. They were morally and contractually bound, and it was not a waste of public property to carry out their part of the agreement, particularly in view of its terms.

The judgment appealed from should be affirmed, with costs.

HILL, P. J., HEFFERNAN and LAWRENCE, JJ., concur; BREWSTER, J., taking no part.

Judgment affirmed, with costs. [See *post,* p. 912.]