In the Matter of THOMAS F. CATAPANO et al., Appellants, v GLORIA GOLDSTEIN et al., Respondents. (And Two Other Captions.)[1]

Second Department, August 25, 1978

1. Reversed on dissenting opinion of SHAPIRO, J. (45 NY2d 810).

**APPEARANCES OF COUNSEL**

*Fabian G. Palomino* and *Galen C. Thomas* for appellants.

*Paul H. Asofsky* for Gloria Goldstein, respondent.

## OPINION OF THE COURT

*Per Curiam.*

█ The issue presented is whether a candidate who admittedly resides in Queens County is eligible to run in a party primary election for nomination to the office of Judge of the Civil Court of the City of New York where the vacancy to be filled is to be chosen by the electors of Kings County. We hold that the candidate must be a resident of Kings County.

Prior to September 1, 1962, there existed a myriad of local courts in the City of New York. Effective on that date, the New York State Constitution was amended to provide for the establishment of a single city-wide court of civil jurisdiction and a single city-wide court of criminal jurisdiction. Section 15 of article VI of the State Constitution reads, in pertinent part: "The said city-wide courts shall consist of such number of judges as may be provided by law. The judges of the court of city-wide civil jurisdiction shall be residents of such city and shall be chosen for terms of ten years by the electors of the counties included within the city of New York from districts within such counties established by law. The judges of the court of city-wide criminal jurisdiction shall be residents of such city and shall be appointed for terms of ten years by the mayor of the city of New York." At the same time, section 35 of article VI provided for the abolition of the City Court and the Municipal Court of New York City and the transfer of the incumbent Justices thereof, for the remainder of their terms, to the new city-wide court of civil jurisdiction "for such district as the legislature may determine." It should be noted that the Justices of the former City Court had been elected on a county-wide basis, while the Justices of the former Municipal Court had been elected on a subcounty or Municipal Court district basis.

In accordance with this constitutional mandate, the Legislature established the Civil Court of the City of New York (L 1962, ch 693), abolished the Municipal and City Courts and constituted the Justices thereof Judges of the Civil Court (CCA, § 2201; L 1962, ch 694). Further, since the mandate of section 15 of article VI was not self-executing *(Matter of Spillane v Katz,* 25 NY2d 34), discretion being delegated to the Legislature to determine the number, geographic allocation and manner of choosing of such Judges *(Cox v Katz,* 22 NY2d 903), it became necessary to enact additional implementing legislation to provide for the filling of vacancies occurring as a

result of the expiration of the terms of the Civil Court Judges transferred from the City and Municipal Courts. Choosing to act by successive annual amendments to chapter 694 of the Laws of 1962, the Legislature has consistently opted for continuance of the pre-existing mixed pattern of county-wide and Municipal Court districts. Thus, for example, the most recent amendment (L 1978, ch 285) provides that Judges to fill vacancies, occurring on January 1, 1979, as a result of the expiration of the term of former City and Municipal Court Justices who have continued as Judges of the Civil Court, or their successors, shall be chosen by the electors of the county or district from which the Judge whose term is expiring, or his predecessor, was elected or appointed. Also, in 1968, the Legislature created 25 additional Civil Court Judgeships, specifically allocated them among the five counties of the city, and provided that the new Judges should be elected "in and from the residents" of the respective counties (L 1968, ch 987, § 14). It is a vacancy created by the expiration of the 10-year term of one of these additional judgeships, allocated to Kings County, which the respondent is apparently seeking to fill.

█ Although section 15 of article VI speaks of a single city-wide court of civil jurisdiction, it is beyond dispute that the Judges of the Civil Court of the City of New York have, since its inception, been elected on a county-wide or Municipal Court district basis. This was the uniform practice during the existence of the predecessor courts and the 1962 amendment clearly contemplated that the Legislature could continue this practice, if it so chose. Indeed, there is absolutely no indication that election on a city-wide basis was ever contemplated. Since Judges of the Civil Court are elected by voters of a county or of a district within a county, it is our view that they must be residents of the county or district from which they are elected. This was the uniform practice under the predecessor courts. Thus, when the City Court was expanded in 1925 to all counties within New York City, it was constitutionally mandated that the additional judgeships, allocated by county, were to be filled by and from residents of the designated counties, and that their successors were to be elected in like manner (NY Const, art VI, § 15, adopted Nov. 3, 1925). In section 176 of the Judiciary Law, the Legislature restated this residence requirement for Justices of the City Court. Justices of the Municipal Court, which was not a constitutional court, were also required to be residents of the districts from which

they were elected (Municipal Ct Code, § 2, as added by L 1915, ch 279).

◼ Although Judges are not elected to represent a particular constituency but to apply the law *(Cox v Katz,* 22 NY2d 903, *supra),* the constitutional allocation of Civil Court Judgeships by counties or subcounty districts within the city necessarily implies a constitutionally permissible requirement of residency within the political subdivision from which elected. Otherwise, geographical allocation would make no sense. If the only purpose of such allocation was to cope with varied caseloads, it would be a simple matter to merely assign a Judge elected from an area with a lesser caseload to sit in another area with a greater caseload. Obviously, geographical allocation, premised upon the election to a central court of a certain number of Judges from designated areas, despite the fact that they do not act collectively, is intended to meet a more fundamental need; to wit, to assure all areas of the city an opportunity to elect one of their own residents to the bench. That local residency is required is also manifest from the post 1962 legislative enactments which, in effect, continued the prior law and practice with respect to choosing the successors of the original 95 Judges of the Civil Court and specifically adopted a county residency requirement with respect to the additional judgeships created in 1968.

◼ Residency requirements for public office have been part of our form of government at least since 1892 when the Public Officers Law was enacted (L 1892, ch 681). Section 3 of this law provides that no person shall be "capable of holding" a local civil office unless a "resident of the political subdivision or municipal corporation of the state for which he shall be chosen, or within which the electors electing him reside, or within which his official functions are required to be exercised". At bar, the respondent is seeking nomination to a Civil Court Judgeship allocated to Kings County and to be chosen county-wide. The appropriate residency requirement in this case, under section 3 of the Public Officers Law, being residency in the political subdivision within which the electors reside, residency in Kings County would clearly be necessary.

◼ Section 15 of article VI of the State Constitution speaks only of residency in the "city". However, in view of the fact that the Judges of the city-wide Civil Court are not required by the Constitution to be elected city-wide, and the Legislature having the discretion to determine the geographic allocation

and manner of choosing of such Judges, the city residency requirement is clearly no more than a minimal standard. It was intended to confine the judgeships to city residents and to conform the Civil Court with its city-wide criminal counterpart whose judgeships are unallocated and filled by mayoral appointment. The additional statutory requirement of county or subcounty residence for Civil Court Judges is, therefore, entirely consistent with the constitutional scheme and its operation in actual practice.[2]

█ In conclusion, then, the judgment under review must be reversed and the petition to invalidate the respondent's designating petition granted since the respondent is not a resident of the county from which she seeks election to the Civil Court.

SHAPIRO, J. (dissenting). Section 15 of article VI of the New York State Constitution provides that "[t]he judges of the court of city-wide civil jurisdiction shall be residents of such city". The majority holds that a resident of Queens County is ineligible to run in the Democratic Party primary election in Kings County for the office of Judge of the Civil Court of the City of New York. I disagree.

The Civil Court of the City of New York was created in 1962 as part of a sweeping court reform initiated by the adoption of an entirely new judiciary article to the New York State Constitution (art VI, adopted Nov. 7, 1961, eff Sept. 1, 1962). This new judiciary article abolished the Municipal Court of the City of New York and the City Court of the City of New York (art VI, § 35, subd a) and the Justices of those courts then became Judges of the new Civil Court of the City of New York (art VI, § 35, subd c; CCA, § 2201).

In 1925, when the City Court of the City of New York was expanded to cover all the counties of the city (it formerly covered only New York and Bronx Counties), the Legislature passed, and the People adopted, a constitutional provision requiring that the Justices of the City Court "shall reside in and be chosen by the electors in the county" of election (NY Const, former art VI, § 15, adopted Nov. 3, 1925). In 1951 that section of the Constitution was amended so as to delete any residency requirement for Justices of the City Court (NY

---

2. The voters' rejection of an amendment proposed by the 1967 State Constitutional Convention, which would have specifically required county rather than city residence, is of no significance in our view since, among other considerations, the amendment would merely have made the existing law and practice more explicit.

Const, former art VI, § 15, amd and approved Nov. 6, 1951, eff Jan. 1, 1952). The Legislature then provided by statute that City Court Justices were to be elected on a county-wide basis and that they were required to be residents of the county in which they were elected (Judiciary Law, § 176). The Municipal Court of the City of New York was made a court of record in 1915 (L 1915, ch 279) and since that time the Constitution has never contained a specific residency requirement with reference to its Justices. The residency requirement for Municipal Court Justices was contained in the former Municipal Court Code which provided that such Justices were to be elected from districts within the counties of the city and that each was required to "be a resident and elector in the district for which he shall be elected" (Municipal Ct Code, § 2).

In proposing adoption by the people of the new section 15 of article VI of the State Constitution, the Legislature abandoned the immediate past practice of prescribing such residency requirements in statutes and specifically provided that Judges of the new city-wide Civil Court need only be "residents of such city" (art VI, § 15, subd a). The previous residency provisions relating to Justices of the City and Municipal Courts were either repealed (CCA, § 2207) or have fallen into disuse by reason of the nonexistence of the office (Judiciary Law, § 176).

There are currently what may be called three "classes" of Civil Court Judges, namely (1) those whose seats were formerly held by City Court Justices, elected on a county-wide basis; (2) those whose seats were formerly held by Municipal Court Justices, elected from districts located within individual counties and (3) those whose seats were created by section 14 of chapter 987 of the Laws of 1968, elected on a county-wide basis. With respect to the first two classes, the relevant statutes merely prescribe the locale of the electors and restate the constitutional provision that candidates for those seats must be residents of the City of New York (see L 1962, ch 694, § 1; L 1965, ch 45; and L 1968, ch 987, § 14; and see, also, L 1962, ch 694, as amd by L 1964, ch 377; L 1965, ch 469; L 1966, ch 109; L 1967, ch 39; L 1968, ch 152; L 1970, ch 471; L 1971, ch 365; L 1972, ch 288, § 1; L 1973, ch 107, § 1; L 1974, ch 458, § 1; L 1975, ch 298, § 1; L 1976, ch 277, § 1; L 1977, ch 215, § 1; L 1978, ch 285, § 1). With respect to the third class, the Legislature provided that they must be elected "in and from" the residents of the county in which the election is held

(L 1968, ch 987, § 14). If the word "from" in that provision is construed to mean, as the majority of this court is construing it, that candidates for the office of Judge of the Civil Court must be residents of the county of election, it is plainly in conflict with, and a limitation upon, the constitutional provision requiring only that "[t]he judges of the court of city-wide civil jurisdiction shall be residents of such city" (NY Const, art VI, § 15, subd a).

By relying upon the historical tradition that candidates for Civil Court Judgeships must be residents of the locale from which they are elected, the majority fails to recognize that such alleged historical tradition has been superseded by the wording of the present Constitution. "[T]he plain and direct provisions of a constitution cannot be modified or amended by practice, custom or violation, no matter how long continued" (*Matter of Koenig v Flynn*, 258 NY 292, 300). The language employed by the Legislature in drafting section 15 of article VI of the New York Constitution is clear and reflects a conscious decision to open all judicial offices in the new "city-wide" court to persons residing anywhere within the city. Furthermore, the present scheme reflects the reality that many citizens reside in one borough and work in another. In the instant case the respondent Goldstein is not in any sense a "carpetbagger". She was admitted to the Bar of this State in 1956 and, although she lives in Queens County, she has engaged in the active practice of law from offices in Brooklyn ever since her admission. It is for the electorate, and not a court by judicial construction, to express its will as to whether that is a sufficient nexus with Kings County to qualify the respondent for the office which she seeks.

The wisdom of the present constitutional residency scheme is not our concern nor is it open to repeal by judicial emasculation. It was, however, open to review by the delegates to the State Constitutional Convention of 1967. Section 10 of the proposed judiciary article which they framed, provided in part that "[t]he judges of the civil court shall be residents of the county within which elected". In debate concerning this article, Delegate Saul S. Streit explained that the proposed section 10 would make "a slight change in that civil court judges must now be residents of the county instead of the city" (Proceedings of the Constitutional Convention of State of NY of 1967, vol 3, p 839). The change was agreed upon by the convention and was part of the proposed Constitution of 1967,

which was defeated by the voters. Thus it is apparent that the Legislature, when it drafted and submitted the present constitutional provision to the electorate, could have worded it so as to require residence in the county of election. It did not do so and its unambiguous language clearly evidences a contrary intent.

To the extent that the majority's holding is predicated upon the provisions of section 3 of the Public Officers Law, I believe its interpretation of that section is incorrect. The section provides that "[n]o person shall be capable of holding a civil office who shall not, at the time he shall be chosen thereto * * * be a citizen of the United States, a resident of the state, *and if it be a local office, a resident of the political subdivision or municipal corporation of the state for which he shall be chosen, or within which the electors electing him reside, or within which his official functions are required to be exercised"* (emphasis added). The majority reasons that since the candidate does not reside in the geographical area within which the electors electing her reside, she is ineligible to run in Kings County.

The applicable wording of section 3 of the Public Officers Law is phrased in the disjunctive, using the word "or", indicating that the statutory language is to be construed in an alternative sense *(McSweeney v Bazinet,* 269 App Div 213, affd 295 NY 797; McKinney's Cons Laws of NY, Book 1 Statutes, § 235). In this context the Attorney-General has issued an opinion construing section 3 of the Public Officers Law to mean that satisfaction of any one of the three alternative residency requirements set forth therein is sufficient compliance with the statute (1975 Opns Atty Gen 181, 182). The respondent has satisfied two of these requirements. She is a resident of the municipality, the City of New York, and is a resident of the geographical area within which her official functions are required to be exercised. The Civil Court of the City of New York is a "city-wide" court, and Judges thereof may exercise their powers anywhere within the boundaries of that city (NY Const, art VI, § 26, subd g).

I therefore conclude that the broad residency requirement set forth in section 15 of article VI of the New York State Constitution must be given full force and effect, and that it cannot be limited by statute. In my opinion it clearly authorizes the candidacy of respondent Goldstein. Accordingly, the judgment appealed from should be affirmed.

MOLLEN, P. J., HOPKINS, DAMIANI and O'CONNOR, JJ., concur in *Per Curiam* opinion; SHAPIRO, J., dissents and votes to affirm the judgment with an opinion.

Judgment of the Supreme Court, Kings County, dated August 18, 1978, reversed, on the law, without costs or disbursements, application granted, and the Board of Elections is directed to remove the name of Gloria Goldstein from the appropriate ballot.