**STATE OF HAWAII**, Plaintiff–Appellee, v. **CLIFFORD CABRAL**, Defendant–Appellant, and **MICHELLE CABRAL**, Defendant

NO. 14459

(FC–CR. NO. 89–0019)

MAY 14, 1991

BURNS, C.J., HEEN, AND TANAKA, JJ.

## OPINION OF THE COURT BY BURNS, C.J.

Defendant Clifford Cabral (Clifford) appeals the family court's March 14, 1990 Judgment which notes that the jury found Clifford guilty of Count I (for the lesser–included offense of manslaughter) and Count II (for murder) for the death of Michael Chun (Michael), but sentences him only under Count II (for murder) to incarceration for life. Because the jury instructions were prejudicially insufficient, we vacate the March 14, 1990 Judgment and remand for further proceedings consistent with this opinion.

## FACTS

Michael, Michelle Cabral's (Michelle) son from a prior marriage, was born on August 12, 1981. Clifford and Michelle were married on May 29, 1984. Michael was a regular patient at the Waianae Coast Comprehensive Health Center (WCCHC), which was open 24 hours a day. All of the costs of Michael's treatment were paid by Medicaid.

Michelle testified that on Saturday, August 2, 1986, Michael vomited his breakfast in the living room of the family residence. Clifford responded by striking Michael across the mouth, punching him in the stomach, and ordering him to his room. In the afternoon, when Michael emerged from his room and reported that he had again vomited, Clifford slapped and kicked Michael and then dragged him into the bathroom. From the direction of the bathroom, Michelle heard the sounds of water running, a stick hitting skin, and a thumping sound, as if someone had fallen in the bathtub. Later, Clifford repeatedly struck Michael across the mouth.

On Saturday evening, Sunday, and Monday Michelle fed Michael saimin (noodle) broth and liquids which Michael vomited soon after eating.

On Monday, Clifford twice prevented Michelle from taking Michael to the doctor. The first time he stated: "You're not going to go and pin this on me." The second time he stated that Michael was "just acting to get attention." On Tuesday evening, Clifford struck Michael's head and hands with a stick.

On Wednesday morning, Clifford and Michelle found Michael curled up on his bedroom floor, barely able to speak and complaining of a headache. Michelle took him to the WCCHC. Within five minutes of his arrival, Michael suffered cardiac arrest. Michael was immediately transferred to Kuakini Medical Center, where he was pronounced dead.

An autopsy revealed multiple bruises on Michael's body and traumatic injuries to his abdomen and head. Michael's body was both dehydrated and emaciated. His death was caused by the abdominal injuries and the subsequent absence of medical care and nurturing.

Clifford and Michelle were charged as follows:

Count I: On or about the 31st day of July, 1986, to and including the 6th day of August, 1986, in the City and County of Honolulu, State of Hawaii, CLIFFORD

CABRAL and MICHELLE CABRAL, being the parents, guardians, or persons having legal or physical custody of Michael Chun, a person less than 18 years of age, did intentionally or knowingly cause the death of Michael Chun, thereby committing the offense of Murder, in violation of Section 707–701 of the Hawaii Revised Statutes.

**Count II:** On or about the 31st day of July, 1986, to and including the 6th day of August, 1986, in the City and County of Honolulu, State of Hawaii, CLIFFORD CABRAL, being the parent, guardian, or person having legal or physical custody of Michael Chun, a person less than 18 years of age, did intentionally or knowingly cause the death of Michael Chun by voluntarily omitting to perform a duty imposed by law, thereby committing the offense of Murder, in violation of Sections 707–701, and 702–203(2) of the Hawaii Revised Statutes.

**Count III:** On or about the 31st day of July, 1986, to and including the 6th day of August, 1986, in the City and County of Honolulu, State of Hawaii, MICHELLE CABRAL, being the parent, guardian, or person having legal or physical custody of Michael Chun, a person less than 18 years of age, did intentionally or knowingly cause the death of Michael Chun by voluntarily omitting to perform a duty imposed by law, thereby committing the offense of Murder, in violation of Sections 707–701 and 702–203(2) of the Hawaii Revised Statutes.

Pursuant to a plea bargain, the prosecution agreed to nolle prosequi Count I as to Michelle and reduced Count III to a manslaughter charge.

The March 14, 1990 Judgment states that Clifford "IS CONVICTED AND FOUND GUILTY" in Count I of manslaughter as an included offense and in Count II of murder as charged. It imposes "FINAL JUDGMENT AND SENTENCE OF THE

COURT" in Count II of incarceration for life. It states that "[s]ince both counts culminated in the death of one person, the Court is imposing sentence only for Count II."

## DISCUSSION
### I.

Clifford contends that the family court reversibly erred when it denied his post–verdict motion to dismiss Count I or Count II either on a constitutional double jeopardy ground or a statutory lesser–included offense ground. We disagree.

There is no basis for dismissing Count I or Count II on a statutory lesser–included offense ground. Under the definition of included offenses in Hawaii Revised Statutes (HRS) § 701–109 (1985), neither of the two counts charged in this case is a lesser–included offense of the other. Thus, we will confine our discussion to the constitutional double jeopardy ground.

In *State v. Dow*, 72 Haw. 56, 806 P.2d 402 (1991), the Hawaii Supreme Court examined the ramifications of the fact that under HRS § 291–4(a) (1985) there are two different ways to commit the offense of driving under the influence of intoxicating liquor. It concluded that a defendant who allegedly commits this offense in both ways can be charged with having committed one offense in two different ways. It further concluded that the trial court's acquittal on the allegation that the defendant committed the offense one of the alleged ways was not a true acquittal and did not bar his subsequent conviction on the allegation that he committed the offense the other alleged way.

In one–offense–committed–two–different–ways cases, it has been the State's practice in the First Circuit to allege each way in a separate count. In *State v. Lemalu*, 72 Haw. 130, 809 P.2d 442, (1991), the Hawaii Supreme Court approved in such cases the

allegation of two counts joined by the conjunctive "and" and disapproved the allegation of two counts joined by the disjunctive "or." In our view, the most appropriate method to allege one offense committed in two different ways is to allege in one count that the defendant committed the offense (a) in one way "and/or" (b) in a second way. The fact that, in jury trials, the jury instructions must be carefully worded with respect to any included offenses, does not alter our view. Further, when the verdicts find the defendant guilty of committing one offense in two or more different ways, the sentence and judgment of conviction is imposed for having committed it the most serious way. *People v. Hosty*, 146 Ill. App. 3d 876, 886, 497 N.E.2d 334, 340 (1986).

The state and federal constitutional prohibitions of double jeopardy protect against a second prosecution and/or a second punishment for the same wrongful act or offense. *Commonwealth v. Bolden*, 472 Pa. 602, 618, 373 A.2d 90, 97–98 (1977).

The double jeopardy prohibitions do not prohibit charging a defendant with having committed one crime in one way and/or in another way nor do they prohibit a trial of such a charge. *Lemalu, supra.* In Clifford's case, each count stated a different way by which Clifford allegedly murdered Michael. Count I resulted in a verdict of guilty of the included offense of manslaughter. Count II resulted in a verdict of guilty of murder. Since the family court sentenced Clifford and entered a judgment of conviction only under Count II, the family court did not violate the state and federal constitutional prohibitions against a second punishment for the same wrongful act or offense.

The double jeopardy prohibitions do not prohibit a state from retrying a defendant whose judgment of conviction is set aside because of error. *Bolden*, 472 Pa. at 638, 373 A.2d at 107. Such a retrial is a continuation of the first prosecution, not the commencement of a second prosecution. In this decision on Clifford's appeal, we are (1) vacating the verdict, sentence, and judgment of

conviction entered on Count II; (2) not disturbing the verdict in Count I; (3) permitting a retrial on Count II; (4) permitting a sentence and judgment of conviction of the verdict in Count I if the verdict in Count II is other than guilty; and (5) permitting a sentence and judgment of conviction of the verdict in Count I or the verdict in Count II if the verdict in Court II is guilty. When the case is returned to the family court, for Count I there will be a verdict of guilty of manslaughter but no sentence. For Count II there will be no dismissal, no verdict, and no sentence but a possible retrial. No mistrial, no acquittal, no sentence, and no judgment of conviction will have been entered on Count I or Count II. Therefore, Clifford's right to be free from double jeopardy will not have been implicated.

## II.

Michael's death was caused by his abdominal injuries and the subsequent absence of medical care and nurturing. Clifford challenges the family court's (1) pretrial denial of his motion to dismiss Count II and (2) jury instructions with respect to Count II. In both contexts, the family court concluded that the elements of the crime of murder alleged in Count II were as follows:

> One, [Clifford] caused the death of Michael Chun by voluntarily omitting to perform a duty imposed by law; more specifically, the duty of care to provide, support and maintain Michael Chun's health and well being; and, two, [Clifford] did so intentionally or knowingly.

At the time of Clifford's alleged offense, HRS § 707–701 (1985) and § 702–203 (1985) provided, in relevant part, as follows:

> §707–701 **Murder.** (1) Except as provided in section 707–702, a person commits the offense of murder

if he intentionally or knowingly causes the death of another person.

\* \* \*

§702–203 **Penal liability based on an omission.**
Penal liability may not be based on an omission unaccompanied by action unless:

\* \* \*

(2) A duty to perform the omitted act is otherwise imposed by law.

According to W. LaFave & A. Scott, *Substantive Criminal Law*, § 3.3 (1986), there are seven situations which may give rise to a duty to obtain reasonably necessary and available medical services: (1) relationship; (2) statute; (3) contract; (4) voluntary assumption of care; (5) creation of the peril; (6) duty to control conduct of others; and (7) ownership of land.

### A.

Consistent with situations (2) and (5) listed above, the State contends that Clifford had a duty under HRS § 663–1.6(a) (1985) to obtain reasonably necessary and available medical services for Michael. HRS § 663–1.6(a) states as follows:

**Duty to assist.** (a) Any person at the scene of a crime who knows that a victim of the crime is suffering from serious physical harm shall obtain or attempt to obtain aid from law enforcement or medical personnel if the person can do so without danger or peril to any person. Any person who violates this subsection is guilty of a petty misdemeanor.

The plain language of this statute indicates that it applies to the perpetrator of the crime as well as other persons at the scene of the

crime. Normally, the perpetrator of the crime will be prosecuted for the crime rather than the violation of HRS § 663–1.6(a). That fact, however, does not exempt the perpetrator of the crime from his duty under HRS § 663–1.6(a). However, Count II was not presented to the jury pursuant to the duty imposed by HRS § 663–1.6(a). On remand, it may be so presented.

## B.

Consistent with situations (1) and (2) listed above, the State contends that Clifford had a duty to perform the omitted act under other applicable statutes. The issue is whether a stepparent acting in loco parentis has a legal duty to obtain reasonably necessary and available medical services for his or her stepchild.

The statutory sections relied on by the family court in its instructions to the jury suggest that the answer is an unqualified yes. HRS Chapter 587 is the Child Protective Act. Its purposes are "to safeguard, treat, and provide permanent planning for children who have been harmed or threatened with harm." HRS § 587–1 (Supp. 1990). It expressly "finds that children deserve and require competent, responsible parenting and safe, secure, loving, and nurturing homes." *Id.* The definition of "family" in HRS § 587–2 (Supp. 1990) includes "each parent's spouse." As defined in HRS § 587–2 (1985), "harm" includes malnutrition, failure to thrive, and extreme pain.

However, HRS § 577–4 (1985) expressly qualifies and limits the legal duty a stepparent acting in loco parentis owes to his stepchild. It provides as follows:

> **Stepparent; when required to support stepchild.**
> A stepparent who acts in loco parentis is bound to provide, maintain, and support the stepparent's stepchild during the residence of the child with the stepparent if the

legal parents desert the child or are unable to support the child, thereby reducing the child to destitute and necessitous circumstances.

Based on HRS Chapter 587 and § 577–4, we conclude that a stepparent acting in loco parentis has a legal duty to "support" his or her stepchild only when the legal parents desert the child or are unable to "support" the child. But what is the definition of "support"? Does it include reasonably necessary and available medical services? We conclude that the answer is yes. *Black's Law Dictionary* 1439 (6th ed. 1990) defines "support" as including "anything requisite to . . . health, . . . ; also, proper care, nursing, and medical attendance in sickness[.]" Nothing in HRS Chapter 587 and § 577–4 indicates that the word "support" does not include reasonably necessary and available medical services.

Clifford contends that HRS § 709–903 (1985) and its legislative history are applicable and that they indicate otherwise. We disagree.

HRS § 709–903 provides, in relevant part, as follows:

**Persistent nonsupport.** (1) A person commits the offense of persistent nonsupport if he knowingly and persistently fails to provide support which he can provide and which he knows he is legally obliged to provide to a spouse, child, or other dependent.

(2) "Support" includes but is not limited to food, shelter, clothing, education, and other necessary care as determined by law.

As originally proposed in 1971, HRS §. 709–903(2)'s definition of "support" included "medical attention." When § 709–903(2) was finally approved by the legislature in 1972, the words "medical attention" were omitted. According to the conference committee, it "agreed to the deletion of the words 'medical attention' as a requisite of the term 'support' in order to avoid penalizing the free exercise of certain religions." Hse. Conf.

Comm. Rep. No. 2, in 1972 House Journal, at 1045; Sen. Conf. Comm. Rep. No. 2–72, in 1972 Senate Journal, at 744.

Only a clear showing of contrary intention from legislative history will justify a limitation on the plain meaning of statutory language. *Kaiama v. Aguilar*, 67 Haw. 549, 554, 696 P.2d 839, 842 (1985). If the legal dictionary's definition of "support" did not include "medical attention" or "medical assistance," Clifford's argument that the legislature's express non–inclusion was an exclusion might have some merit. In the absence of their express exclusion, it is reasonable to conclude that the word "support" as used in HRS § 709–903(2) includes "medical attention" and "medical assistance." The only possible exception is when the exercise of religion is involved.

At the trial, it was undisputed that Michael's natural father, who lived in Seattle, Washington, was reasonably unable to provide the necessary assistance. However, Clifford disputed the State's allegation that because of Clifford's actions, Michelle was reasonably unable to provide the reasonably necessary and available medical services. The jury was not instructed to decide this material question of fact. Therefore, the jury instructions were materially and prejudicially insufficient. *State v. Correa*, 5 Haw. App. 644, 706 P.2d 1321 (1985).

## CONCLUSION

Accordingly, we vacate the family court's March 14, 1990 Judgment sentencing defendant Clifford Cabral to incarceration for life for the offense of Murder.

If the State decides to retry Clifford of Count II for murder by voluntarily omitting to perform a duty imposed by law, it may do so. If the Count II verdict finds Clifford not guilty or guilty of a crime less serious than manslaughter, the family court shall sentence Clifford on the Count I manslaughter verdict. If the Count II

verdict finds Clifford guilty of manslaughter, the family court shall sentence Clifford on either the Count I or the Count II manslaughter verdict. If the Count II verdict finds Clifford guilty of murder, the family court shall sentence Clifford on the Count II murder verdict.

If the State decides not to retry Clifford under Count II for murder by voluntarily omitting to perform a duty imposed by law, the family court shall sentence Clifford on the Count I manslaughter verdict. *See State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

We remand for further proceedings consistent with this opinion.

*Jonathan James Ezer (Alvin T. Sasaki* on the brief) for defendant–appellant.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for plaintiff–appellee.