Dissenting Opinion by
ACOBA, J.,
with whom POLLACK, J., Joins.
The following charge using the disjunctive, “or”, was leveled against RespondenVDefen-dant-Appellee Marianne L. Codiamat (Codia-mat):
On or about the 6th day of January, 2011, in the City and County of Honolulu, State of Hawai'i, [ ] CODIAMAT, with intent to harass, annoy, or alarm [complainant], did strike, shove, kick, or otherwise touch [complainant] in an offensive manner or subject [complainant] to offensive physical contact, thereby committing the offense of Harassment, in violation of Section 711— 1106(l)(a) of the Hawai'i Revised Statutes [(HRS)].
(Emphasis added.) At the time this case was filed, it followed from State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977), and State v. Pesentheiner, 95 Hawai'i 290, 22 P.3d 86 (App.2001), that Petitioner/Plaintiff-Appellant the State of Hawai'i (State) was required to file the charge in the instant case in the conjunctive or the eonjunetive/disjunctive, and not solely in the disjunctive. See State v. Batson, 73 Haw. 236, 250, 831 P.2d 924, 932 (1992) (“We agree with the ICA that ‘the *228 most appropriate method to allege one offense committed in two different ways is to allege in one count that the defendant committed the offense (a) in one way ‘and/or’ (b) in a second way.’ ” (quoting State v. Cabral, 8 Haw.App. 506, 510, 810 P.2d 672, 675 (1991))).
Despite its use of the term “or” in this case, the State has conceded that it will only prosecute Codiamat on that part of the charge alleging she “did strike, shove, kick, or otherwise touch [complainant] in an offensive manner[,]” but not on the second part of the charge alleging that Codiamat “subject[ed] [complainant] to offensive physical contaet[.]” See HRS § 711-1106(l)(a) (Supp.2010) [1] Had the State simply pleaded what it admits Codiamat will be tried for, this appeal would not arise. Nevertheless, the majority proceeds to decide that the dual accusation against Codiamat of “touching]” “or” “subjecting] [complainant] to offensive physical contact” is valid, even though Codiamat will not be tried on the second accusation. The majority’s discussion of the sufficiency of the charging document thus is “advisory,” and, respectfully, clashes with the “prohibition against rendering advisory opinions.” Trustees of Office of Hawaiian Affairs v. Yamasaki, 69 Haw. 154, 171, 737 P.2d 446, 456 (1987) (internal quotation marks and citation omitted).
However, because the majority’s opinion will have an effect on future cases, the merits of this case must be discussed even though lacking in an actual controversy. In that regard, and consistent with our precedent, I would hold that the use of the disjunctive “or” failed to provide notice of the conduct for which Codiamat was charged, and that the conjunctive “and” or “and/or” must be used in order to afford Codiamat both due process, pursuant to the Hawaii Constitution article I, section 5, and notice of “the nature and cause of the accusation” against her, pursuant to the article I, section 14 of the Hawaii Constitution. Therefore, I respectfully dissent.
I.
First and as stated previously, the State acknowledged, at trial, on appeal to the Intermediate Court of Appeals (ICA)[2], and in its arguments to this court, that only the “[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner” portion of HRS § 711-1106(l)(a) will be tried in this case.[3] Accordingly, the reference to the clause “subjects the other person to offensive physical contact” in the charge and in the context of HRS § 711-1106(l)(a) has no relevance at all for pleading, trial, or appeal purposes. See HRS § 711-1106(l)(a).
Indeed, as the district court of the first circuit (the court)[4] observed below, although the State failed to amend the complaint in this ease, it has filed complaints converting the “or” to “and/or” in similar harassment eases involving the very same statute at issue here. By appealing the court’s ruling, the State argues the viability of charging language that it has already admitted is meaningless in this case. Thus, any discussion of “or,” “and,” or “and/or” is irrelevant in the context of this appeal, because there is, as the State admits, no actual controversy as to whether the State must prove that the of *229 fense of harassment was committed in either or both of two alternative ways.
In effect, the majority’s opinion will have no legal or practical import in this ease as to the effect of the “subject!]” clause. But,
the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the ease before it.
Kapuwai v. City & Cnty. of Honolulu, Dep’t of Parks & Recreation, 121 Hawai'i 33, 46, 211 P.3d 750, 762 (2009) (quoting Wong v. Bd. of Regents, 62 Haw. 391, 394-95, 616 P.2d 201, 204 (1980)) (emphasis omitted) (brackets omitted). Opining on a charging instrument’s sufficiency therefore should await “cases in which ... [the question] must actually be decided.” State v. Fitzwater, 122 Hawai'i 354, 378, 227 P.3d 520, 544 (2010) (Aeoba, J., dissenting). In the instant case, we are thus “without the benefit of a concrete controversy to validate [this] opinion.” Id. at 381, 227 P.3d at 547 (citation omitted). Consequently, there is no reason to proceed further. This court should dismiss this application. See HRS § 602-59(b) (Supp.2006) (stating grounds for acceptance of certiorari); State v. Tuua, 125 Hawai'i 10, 13, 250 P.3d 273, 276 (2011).
II.
Charging in the disjunctive, “or,” is not permitted, because the types of conduct proscribed in HRS § 711-1106(l)(a) are not synonymous. In Jendrusch, the complaint was “drawn in the language of the statute”, which this court held was generally sufficient, so long as “the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding!.]” 58 Haw. at 282, 567 P.2d at 1245. Jendrusch held that the complaint was insufficient inasmuch the language of the charge was based on an outdated version of the statute, id., but this court also noted that where there are several ways to commit an offense, the charge must not set out those ways in the disjunctive:
To further compound the problem, the draftsman in this ease elected to charge the defendant in statutory language in one count. The type of conduct proscribed by subsection (l)(b) is not factually synonymous with that proscribed by subsection (1)©. In charging' the defendant in the disjunctive rather than in the conjunctive, it left the defendant uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him. Where a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive.
Id. at 283 n. 4, 567 P.2d at 1245 n. 4 (citing Territory v. Lii, 39 Haw. 574 (Haw. Terr.1952)) (emphasis added).
This precept has become a foundation of the charging process. See Batson, 73 Haw. at 249-50, 831 P.2d 924, 932 (1992) (citing with approval the proposition that where a statute proscribes an offense that can be committed by factually alternative conduct, the charge may be in the conjunctive but not in the disjunctive); State v. Lemalu, 72 Haw. 130, 134, 809 P.2d 442, 444 (1991) (“[W]hen the type of conduct proscribed under one subsection of the statute is not factually synonymous with that proscribed by another subsection, we have previously noted that the charge ‘may be laid in the conjunctive but not in the disjunctive’ ”) (quoting Jendrusch, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4), overruled on other grounds by State v. Spearman, 129 Hawai'i 146, 151, 296 P.3d 359, 364 (2013); Cabral, 8 Haw.App. at 510, 810 P.2d at 675 (“In our view, the most appropriate method to allege one offense committed in two different ways is to allege in one count that the defense committed the offense (a) in one way ‘and/or’ (b) in a second way.”); see also State v. McCarthy, No. 29701, 124 Hawai'i 129, 2010 WL 3433722, at *2 (App. Aug. 31, 2010) (mem. op.)[5] (“The *230 complaint is insufficient because it charges the results of the conduct in the disjunctive (‘or’), rather than in the conjunctive (‘and’).”). Thus, a charge drawn in the language of the statute is defective if non-synonymous means of committing the same conduct are charged in the disjunctive. Jendrusch, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4.
III.
A.
Based on their plain language, the two clauses in HRS § Til—1106(l)(a), one having to do with “touch[ing]” and the other with “subject[ingj,” describe dissimilar conduct. See State v. Gomes, 117 Hawai'i 218, 228, 177 P.3d 928, 939 (2008) (“ ‘[Wjhere the language of the law in question is plain and unambiguous,’ courts are obligated to ‘give effect to the law according to its plain and obvious meaning.’”) (quoting Mikelson v. United Servs. Auto. Ass’n, 108 Hawai'i 358, 360, 120 P.3d 257, 259 (2005)). In interpreting statutes, HRS § 1-14 (1993) provides that “[t]he woi’ds of the law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning.” HRS § 1-14 (emphases added); see Keliipuleole v. Wilson, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) (“Words are given their common meaning unless some wording in the statue requires a different interpretation.” (internal quotation marks and citations omitted)). Moreover, this court “ ‘may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined.’ ” State v. Pali 129 Hawai'i 363, 370, 300 P.3d 1022, 1029 (2013) (emphasis added) (quoting State v. Kikuta, 125 Hawai'i 78, 96, 253 P.3d 639, 658 (2011) (internal quotation marks and citation omitted)).
Here, the first clause of HRS § 711-1106(l)(a), “[sjtrikes, shoves, kicks, or otherwise touches another person in an offensive manner” describes a category of conduct obviously relating to touching. The use of the phrase “or otherwise,” indicates that “[sjtrikes, shoves, [and] kicks” are acts of touching another person in an offensive manner. “Otherwise” is defined as, inter alia, “in a different way or manner[,j” “in different circumstances” and “in other respects.” Merriam Webster’s Collegiate Dictionary 823 (10th ed. 1993); see Kikuta, 125 Hawai'i at 96, 253 P.3d at 658 (the use of dictionaries is “one way to determine the ordinary meaning of certain terms.... ”). Thus, “[sjtrikes, shoves, [and] kicks,” are different ways of “touching another person in an offensive manner.”
This construction is also supported by the interpretive canon of ejusdem generis, which holds that “when a general word or phrase follows a list of specifies, the general word or phrase will be interpreted to include only *231 items of the same type as those listed.” Black’s Law Dictionary 556 (8th ed. 1999); see Singleton v. Liquor Comm’n, 111 Hawai'i 234, 243 n. 14, 140 P.3d 1014, 1023 n. 14 (2006). Hence, in HRS § 711-1106(l)(a), “[s]trikes, shoves, [and] kicks,” is the list of specifies, and as such, the general phrase “or otherwise touches another person in an offensive manner” is limited to actions like that of the preceding enumerated acts, such as “strike[ ], shove[ ], [or] kick[ ][.]”
Because the scope of “otherwise touches another person in an offensive manner” is delineated by conduct such as “strikes, shoves, [or] kicks[,]” an ordinary reading of the term “touches” would be understood to mean personal bodily contact. The definition of “touch” as a verb, includes, inter alia, “to put hands upon in any way or degree; especially] to commit violence upon[,]” and “to cause to be briefly in contact or conjunction with something.” Merriam, Webster’s Collegiate Dictionary 1247. Under the statute, therefore, the first clause would connote personal bodily contact between the complainant and defendant.
On the other hand, “subjects the other person to offensive physical contact” denotes contact of a physical nature that would not necessarily involve personal bodily contact. “Subject” is defined, inter alia, as “to cause or force to undergo or endure (something unpleasant inconvenient, or trying).” Merriam Webster’s Collegiate Dictionary 1172. Plainly, personal bodily touching of a person is not required in order to cause or force another person to endure offensive contact.
That these two categories of means are not synonymous is also manifested by the word “or” which separates them. “Or” is defined, inter alia, as “a function word to indicate an alternative[.]” Merriam Webster’s Collegiate Dictionary 817. In State v. Kalani, 108 Hawai'i 279, 118 P.3d 1222 (2005), this court held that “or” ‘“usually connects words or phrases of different meanings permitting a choice of either.’” 108 Hawai'i at 284, 118 P.3d at 1227 (quoting State v. Sorenson, 44 Haw. 601, 604, 359 P.2d 289, 291 (1961)). Hence, the word “or” between the two clauses means that the conduct described is not the same, because, as commonly understood, “or” indicates that the first and second categories of means “connects words or phrases of different meanings....” Id. Thus, a lay person would understand that “or” meant “touches” to involve acts unlike those in the category of “subjeet[ing] the other person to offensive contact” because the two clauses are separated by the term “or”[6] and “[t]he words of a law are generally to be understood in their most known and usual signification[.]” HRS § 1-14.
Furthermore, the statute must be construed as a whole, and doing so reinforces the legislature’s evident intent that the clauses be applied as pertaining to different types of conduct, rather than the same conduct, i.e., personal bodily contact. Cf. State v. Romana’o, 118 Hawai'i 210, 218, 188 P.3d 724, 732 (2008) (“ ‘[L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.’ ”) (quoting HRS § 1-16 (1993)). Construing the first and second clauses with reference to each other indicates that the second clause describes offensive contact that is other than personal bodily contact between the complainant and the defendant, as described in the first clause. The “subjeet[ ]” category is thus not synonymous with the “touches” category of acts.
If the clauses were synonymous, the “subject[ ]” category would be rendered surplus-age. It must be presumed that the legislature intended all of the words in a statute to be given effect and that the words were enacted for a purpose.[7] See Dejetley v. *232 Kaho'ohalahala, 122 Hawai'i 251, 263, 226 P.3d 421, 433 (2010) (“[ejourts are bound to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute.”) (internal quotation marks and citations omitted).
Reading out of existence the phrase “subjects the other person to offensive physical contact” by treating it as “synonymous” with “[sjtrikes, shoves, kicks, or otherwise touches another person in an offensive manner” would encroach on the clear legislative objective to define conduct differently. See State v. Wells, 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (“[Ojur foremost obligation is to ascertain and give effect to the intention of the legislature.”) (internal quotation marks and citation omitted). If every term in the statute were synonymous, as the majority suggests, no reason would exist to list the actions in the first category, such as “[sjtrikes, shoves, kicks, or otherwise touches another person in an offensive manner[,j” because all such conduct would be subsumed under the umbrella phrase “subjects the other person to offensive physical contact.”
The majority’s construction is contrary to reading the statute as a whole and assumes the legislature meant to enact meaningless words—a violation of the fundamental principle that “[djue respect must be accorded the effect of words used by the legislature^]” State v. Kalama, 94 Hawai'i 60, 65, 8 P.3d 1224, 1229 (2000) (citation omitted). It is only by giving full accord to each phrase in the statute that the legislature’s intent in enacting HRS § 711-1106(l)(a) can be effects uated.
B.
Pesentheiner reached the same conclusion, when the ICA was faced with the question of whether the act of knocking off a police officer’s hat constituted “touchpmgj another person in an offensive manner or subjecting] the other person to offensive physical contact” pursuant to HRS § 711—1106(l)(a).[8] 95 Hawaii at 295, 22 P.3d at 91.
In its analysis, the ICA first set out the plain language of the statute into two categories. The first was “[sjtrikes, shoves, kicks, or otherwise touches another person in an offensive manner.” Id. The second was “subjects the other person to offensive physical contact.” Id. The State argued that the conduct at issue fell within the first category, but the ICA held that “[sjuch a construction would be contrary to the eommonsense understanding imparted by the statute’s choice of words.” Id. With respect to the second category of conduct, the ICA concluded that “offensive physical contact” must constitute more than simply the “touching] [of] another person in an offensive manner” if the phrase in the disjunctive is to hold any independent meaning or effect. Id. at 95, 22 P.3d at 91 (emphasis added).
Hence, in Pesentheiner, the ICA recognized the difference between the two clauses in terms of the conduct described by each, giving effect to the language of the statute in its entirety. Id. at 295, 22 P.3d at 91. It stated, “[wje believe that ‘offensive physical contact’ describes the conduct in question here [of knocking off a police officer’s hat], *233 offensive contact that, while separate and apart from the various forms of actual bodily touching, nevertheless involves contact with an item physically appurtenant to the body.” Id. (emphasis added).
Notably, the State had originally argued that the defendant’s conduct was a “strike! ]” within the meaning of the first category of conduct, id. at 294, 22 P.3d at 90, but the ICA held that, construing the statute as a whole, the defendant’s conduct fell within the second category of conduct, which “while separate and apart from the various forms of actual bodily touching, nevertheless involves contact with an item physically appurtenant to the body.” Id. at 296, 22 P.3d at 91 (emphasis added). As a result, the ICA concluded that although a defendant’s contact with the police officer’s hat did not fall within the conduct described in the first clause, it did fall within the conduct described in the second clause. Id.
IV.
Using the word “or” in the charging instrument to charge multiple actions in the same statutory subsection, as the majority advocates, would violate due process by “[leaving] the defendant uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him [or her].” Jendrusch, 58 Haw. at 282 n. 4, 567 P.2d at 1245 n. 4. This requirement, that the defendant be aware of what he or she is charged with, also inheres in the Ha-wai'i Constitution, article I, section 14, which mandates that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation!.]”
As indicated in Jendrusch, the use of the word “or” would indicate to a lay person that he or she was charged with one of the acts described in the statute, but would not indicate which one. Given that “or” is most known as a disjunctive in its ordinary signification, see HRS § 1-14, it signals to a lay person that he or she is in jeopardy of being convicted of the first category of conduct to the exclusion of the second, or of the second category of conduct to the exclusion of the first, without being advised of what prohibited conduct he or she is actually on trial for and must defend against.
In contrast to “or”, “and”, or “and/or” provide the required notice to the defendant for constitutional purposes.[9] “And” is defined as “a function word to indicate connection or addition!,] especially] of items within the same class or type; used to join sentence elements of the same grammatical rank or function!,]” Merriam Webster’s Collegiate Dictionary 43, and is commonly understood to include both. Thus, defendants charged with one type of conduct and another type of conduct would understand that they must be prepared to defend against both types of conduct. See Batson, 73 Haw. at 249-50, 831 P.2d at 932 (reiterating this court’s decision in Lemalu “that where a statute proscribes an offense that can be committed by factually alternative types of conduct, ‘the charge may be laid [out] in the conjunctive but not in the disjunctive.’ ” (quoting Lemalu, 72 Haw. at 134, 809 P.2d at 444) (brackets in original)). The same holds true for “and/or” inasmuch as it indicates to the defendant at least the possibility that the State may be charging both types of conduct, and thus a defendant would similarly prepare to defend against both types of conduct.[10] See id. (noting that “joinder of alternative allegations in a single count by ‘and/or’ is ‘appropriate’” (quoting Cabral, 8 Haw.App. at 510, 810 P.2d at 675)).
*234 Charging two acts in the same statutory subsection by the conjunctive “and” or by use of the conjunctive and disjunctive “and/or” has long been approved by Hawai'i case law. In Batson, this court held that it is sufficient “that one offense allegedly committed in two different ways be charged conjunctively in a single count[,]” and that under these circumstances, “the disjunctive ‘or’ [is] subsumed within the conjunctive ‘and.’” 73 Haw. at 250-51, 831 P.2d at 932 (emphasis added). This court’s conclusion in Batson followed from its holding in Lemalu and the ICA opinion in Cabral. Lemalu reiterated the holding from Jendrusch’s footnote four, that “[pjhrasing a complaint in the disjunctive would not provide [ ] notice as it would leave the defendant ‘uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him.’ ” Lemalu, 72 Haw. at 134, 809 P.2d at 444 (quoting Jendrusch, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4). In Cabral, the ICA held that “[i]n our view, the most appropriate method to allege one offense committed in two different ways is to allege in one count that the defendant committed the offense (a) in one way ‘and/or’ (b) in a second way.” 8 Haw. App. at 511, 810 P.2d at 676.
V.
In this case, the rules of statutory construction are not divorced from the constitutional mandate of fair notice, as the State suggests, but rather, complement each other. For our construction of a statute such as HRS § 711-1106 must be guided by how it is to be understood by persons of ordinary intelligence, a precept the majority opinion violates. See Kalama, 94 Hawai'i at 65, 8 P.3d at 1229; State v. Aiwohi, 109 Hawai'i 115, 136, 123 P.3d 1210, 1231 (2005) (Acoba, J., concurring). “It is how the statute would be read by the layperson which guides our construction in criminal eases.” Kalama, 94 Hawai'i at 65, 8 P.3d at 1229 (quoting State v. Riveira, 92 Hawai'i 546, 561, 993 P.2d 580, 595 (App.1999)). In State v. Sprattling, 99 Hawai'i 312, 55 P.3d 276, this court held that in order to satisfy due process, “the [] charge must be worded in a manner such ‘that the nature of the accusation [could] be understood by a person of common understanding[.]’” 99 Hawai'i at 318, 55 P.3d at 282 (quoting State v. Israel, 78 Hawai'i 66, 71, 890 P.2d 303, 308 (1995)) (first brackets added, other brackets in original).
This approach to plain meaning is underscored by the fact that, under the “void-for-vagueness” doctrine, see State v. Beltran, 116 Hawai'i 146, 151, 172 P.3d 458, 463 (2007) (citations omitted), “to comport with due process, penal statutes must inform a person of ordinary intelligence of what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.” Kalama, 94 Hawai'i at 64, 8 P.3d at 1228 (citations omitted). “The statutory mandate that the ‘usual’ and ‘popular’ reading be employed in interpreting a statute, see HRS § 1-14, is plainly intended to attribute to a statute a construction that would be readily understood by a layperson.” Aiwohi, 109 Hawai'i at 136, 123 P.3d at 1231 (Acoba, J., concurring).
In accordance with these principles, this court has established that ‘“[b]eeause construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text.’ ” Kalama, 94 Hawai'i at 65, 8 P.3d at 1229 (quoting Crandon v. United States, 494 U.S. 152, 160, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)) (emphasis added). Consequently, canons of statutory construction, including HRS § 1-14, hold that the terms in HRS § 711—1106(l)(a) are non-synonymous, and such a reading is consistent with giving fair warning to the layperson of the full range of conduct, both involving personal bodily contact and subjecting a person to offensive contact, that could be covered under the statute. “[T]o avoid running afoul of these fundamental [constitutional] principles, we [must] give [the statute] a construction that would not ensnare conduct beyond the plain import of the statute.” Id.
VI.
The interpretation that the State urges this court to adopt, and the majority in fact applies, not only fails to notify the defendant *235 of the accusations against him or her, but has the effect of affirmatively misleading the defendant as to what conduct he or she must defend against, and what must be done to prepare for trial. In the instant case, for example, under this “synonymous approach,” there is apparently no basis for the accusation that Codiamat “subjeet[ed] another person to offensive physical contact[.]” But, under this approach, adopted by the majority, a defendant would not know which act he or she is accused of, but instead would be misled by the complaint as to a charge of “subject[ing] another person to offensive physical eontact[,]” when, in fact, no such charge will be prosecuted.
Under the “synonymous” construction of the statute and the complaint adopted by the State, nothing at all would inform the defendant that all of the conduct set forth in the statute and charge is to be considered synonymous. This construction by the State and the majority contradicts the enumeration of separate and discrete acts that a common sense and ordinary reading of the complaint would engender. A lay person reading the charge in this ease would not read it as signifying a homogeneous charge of offensive touching, but instead, taking the words in their “general or popular use or meaning[,]” HRS § 1-14, would believe multiple ways of violating the offense were in issue.
The State’s and the majority’s approach thus violates due process, which requires that “the defendant in a criminal action should not be relegated to a position from which he [or she] must speculate as to what crime he [or she] will have to meet in defense.” Israel, 78 Hawai'i at 71, 890 P.2d at 308. Indeed, as noted, the statute must be viewed from the perspective of a person of common understanding. Sprattling, 99 Hawai'i at 318, 55 P.3d at 282 (citation omitted).
VII.
The majority holds, first, that the State’s admission that “the only act being charged here is an offensive touching of another person[,]” is not problematic. Majority’s opinion at 221-22 n. 3, 317 P.3d at 665-66 n. 3. Second, the majority asserts that Hawai'i courts have never enforced a strict rule against disjunctive charging, and that the charge in this case does not violate the Jen-drusch rule because Codiamat is charged with violating only one subsection of the statute, which “codifi[es] a single category of harassing behavior.” Majority’s opinion at 225-26, 317 P.3d at 669-70. Third, the majority claims that in general, “acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute[,]” a rule that the majority asserts strikes a balance between a less technical approach to charging and the protection of defendants’ rights. Majority’s opinion at 226-27, 317 P.3d at 670-71.
A.
The majority argues that “the State’s admission [that the only act being charged is an offensive touching of another person] must be read in the context of its continuing assertion that ... ‘touch[ing Complainant] in an offensive manner’ [is] factually synonymous with the words ‘subject[ing Complainant] to offensive physical contact.’ ” Majority’s opinion at 221-22 n. 3, 317 P.3d at 665-66 n. 3 (citation and internal quotation marks omitted). Respectfully, the majority simply ignores the State’s clear admission that it is only charging “offensive touching” and that the other words in the charge constitute surplusage. Thus the majority upholds the validity of the original charge even in the face of the State’s express disavowal of the second part of the charge, and the fact that that part of the charge will have no effect whatsoever on the defendant’s criminal liability.
The majority defends the State’s charge by positing that the State was justified in charging both forms of conduct because “the nature, or the breadth” of the act that the State was charging Codiamat with “[is] unclear[,]” even though the State itself does not make this argument. Majority’s opinion at 221-22 n. 3, 317 P.3d at 665-66 n. 3. However, it is difficult to discern how the majority can advance this argument where the State has explicitly conceded that it will only prosecute Codiamat for “strik[ing], shov[ing], kicking] or otherwise touching] [complainant] in an *236 offensive manner[.]” Thus, in its appeal, the State has made abundantly clear the “nature, or the breadth” of the act that it intends to prosecute. Yet, the State continues to maintain that it needed to charge both forms of conduct, connected by the word “or.”
B.
The majority’s second contention is that this court has never relied upon the rule against charging in the disjunctive in reaching the holding of a ease, and that the rule has not been enforced. Majority’s opinion at 223-24, 225, 317 P.3d at 666-67, 668. This amounts to an argument for abolishing precedent, for we have clearly-established governing ease law on the sufficiency of a charge, with respect to conjunctive and disjunctive language. Rules in our case law are set down on the assumption that they will be followed. The majority rule would, in effect, revert to pre-Jendmsch law, disregarding the limitations on disjunctive charging adopted by this court after Jendrusch.
In order to justify this revision of our law, the majority initially mentions that footnote 4 in Jendrusch was “dicta.” Majority’s opinion at 223-24, 317 P.3d at 667-68. However, this footnote was prospective in nature, rather than dicta.[11] Subsequently, as discussed, this cautionary language was expressly affirmed by this court and the ICA, and therefore the rule decidedly is not dicta. See Batson, 73 Haw. at 249-50, 831 P.2d at 932; Lemalu, 72 Haw. at 134, 809 P.2d at 444; Cabral, 8 Haw.App. at 510, 810 P.2d at 675. The requirement that non-synonymous conduct not be charged in the disjunctive has been repeated numerous times in Hawaii case law. See discussion supra.
Additionally, the majority makes much of the ICA’s unpublished SDO in State v. Freitas, No. 28430, 2010 WL 2862051, at *4 (App. July 22, 2010). Majority’s opinion at 224, 317 P.3d at 224. However, Freitas incorrectly interpreted the Jendrusch rule as applying only to conduct proscribed under different sections of the statute, Freitas, 2010 WL 2862051, at *3, where nothing in Jendrusch suggests that the rule is only applicable to conduct charged under different sections or subsections of a statute. Jendrusch, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4. Freitas, in effect, did not follow precedent. It is not surprising that the ICA in McCarthy, discussed supra, departed from Freitas and held that under Lemalu and Jendrusch the types of conduct in the harassment statute cannot be charged in the disjunctive.[12] The ICA in this case followed McCarthy in holding that the charge was deficient because the two forms of conduct in HRS § 711— 1106(l)(a) were charged in the disjunctive. Codiamat, 2012 WL 3113898, at *2-3.
C.
After maintaining that footnote 4 in Jen-drusch is dicta, and that Hawai'i precedent does not disallow disjunctive charging, the majority goes on to set out its own interpretation of Jendrusch and then apparently concludes that the charge in this case satisfies *237 that interpretation. Majority’s opinion at 225-26, 317 P.3d at 669-70.
In reinterpreting Jendrusch, the majority contends that this court “stated only that charging [HRS § 711-1101(1) ] subsection (b) and subsection © disjunctively deprived the defendant of notice[,]” and that the opinion “expressed no concern as to charging [the different non-synonymous acts contained within subsection ©] disjunctively.” Id. at 225, 317 P.3d at 669. This is an insupportable view of Jendrusch, and serves only to justify the majority’s position. Clearly the rationale underlying this court’s examples of the problem with charging subsections (b) and © disjunctively would similarly apply to the “several ways in which” a violation of subsection © might be effectuated. See Jendrusch, 58 Haw. at 282 n. 4, 567 P.2d at 1245 n. 4.
The import of Jendrusch is not simply that specific errors would result in charging dis-junctively in HRS § 711-1101(1), but rather, that “[wjhere a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive[,]” id. (emphasis added), in order to comport with due process. Jendrusch did not state that it applied only to subsections in a statute, as the majority now holds, but unambiguously applied to the “several ways in which a violation may occur.” Id. (emphasis added). The guarantee that the accused must be informed of the nature and the cause of the accusations, Haw. Const, art. 1, § 14, cannot be satisfied in any other way.
In its application of Jendrusch to this case, the majority’s interpretation reveals further flaws. In the majority’s view, “whether Co-diamat was charged with direct offensive touching or indirect offensive contact is relatively inconsequential.” Majority’s opinion at 225, 317 P.3d at 669. It is unclear how this could be an accurate statement where the defendant is unaware of which of the two forms of conduct constituted the charge against her. In failing to determine whether the two categories of conduct are analogous, the majority not only misconstrues Jen-drusch, but also repeatedly disregards the canons of interpretation that govern whether particular conduct in HRS § 711-1106 may be charged in the conjunctive or disjunctive.[13]
D.
Furthermore, the “balance” that the majority asserts it strikes between “ease of administration and protection of defendants’ rights,” majority’s opinion at 226, 317 P.3d at 670, in fact weighs heavily on the side of the so-called “ease” and against the protection of constitutional rights. In the last portion of its opinion, the majority employs two different standards. It first states that acts may be charged in the disjunctive if they are “closely related, falling within the same category of behavior” and are in the same subsection of the statute. Majority’s opinion at 226, 317 P.3d at 670. Then, it states that “acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute.” Majority’s opinion at 225, 317 P.3d at 668.
The majority thus distinguishes between using the disjunctive to charge violations of multiple sections or subsections of a statute and using the disjunctive to charge multiple acts within the same subsection of the statute. Id. But, the majority articulates no reason to discriminate between acts charged under the same section or subsection of a statute from violations of sections only.
Indeed, there is no rational basis for focusing on the location in the statute where the conduct is described rather than on the conduct itself. The majority must acknowledge that the use of the disjunctive in joining charges of violations of multiple sections or subsections of a statute “may confuse the defendant as to the number of disparate acts with which he or she is charged[,]” majority’s opinion at 226-27, 317 P.3d at 670-71, but the majority does not indicate why a defendant would not be confused when multiple ways of committing the offense from the same subsection are also disjunctively charged.[14]
*238 Under the majority’s holding, “[a] person of common understanding,” Sprattling, 99 Hawai'i at 318, 55 P.3d at 282, would not understand a charge differently simply because the acts charged were originally located in one subsection or in different subsections of the criminal statute. In order to comport with due process, “the [] charge must be worded in a manner such that the nature and cause of the accusation could be understood by a person of common understanding.” Id. (brackets omitted) (citation and internal quotation marks omitted).
As a result, the focus of a court’s analysis must be on the conduct itself, and whether the conduct described would indicate to the defendant that he or she has committed the offense in multiple ways. Respectfully, there is no principled basis for discriminating between acts charged, whether they occur in different subsections or within the same subsection of a statute. Plainly, for the reasons stated supra, the application of such a rule in this case would violate due process. See Israel, 78 Hawai'i at 69, 890 P.2d at 306 (holding that the sufficiency of a charge is measured by, among other things, whether the charge “sufficiently appraises the defendant of what he or she must be prepared to meet”).
Moreover, both proposed tests would spawn more litigation, rather than serve the purposes of clarity and fairness in charging procedures. Assuming that the State does charge in the disjunctive, defendants will have to decide whether the acts described “charge similar forms of conduct[,]” although exactly how “similar” or dissimilar this conduct must be is unknowable. The majority does not explain how it knows that the acts described “charge similar or analogous forms of conduct” other than to say that “direct offensive touching [and] indirect offensive contact ... fall[ ] within the same category of behavior.” Majority’s opinion at 225-26, 317 P.3d at 669-70.
The majority’s “similarity” test “relegates] [the defendant] to a position from which he or she must speculate as to what crime he or she will have to meet in defense.” Sprattling, 99 Hawai'i at 318, 55 P.3d at 276 (brackets omitted) (internal quotation marks and citation omitted). The majority provides no indication of how a defendant will be able to determine that two acts are “similar” or even what “similar” means, for purposes of disjunctive charging.
As noted supra, the majority’s “closely related, category of behavior” test is similarly confusing. There are no parameters for what constitutes the same “category of behavior.” For example, applying this language, one could assume that everything in a particular statute would constitute the same “category of behavior” because the statutes themselves are organized by category. By “closely related,” the majority could mean that the acts are in the same statutory subsection, or something else. What “closely related” means in the context of a criminal statutory scheme is not comprehensible to “a person of common understanding.” Sprattling, 99 Hawai'i at 318, 55 P.3d at 282.
Consequently, the majority’s claim to a “nontechnical” approach to pleading standards results in ambiguities that will prevent an accused from being “informed of the nature and cause of the accusation” leveled against him or her, Haw. Const, art. I, § 14, and would deprive persons of liberty “without due process of law.” Haw. Const. art. I, § 5.
VIII.
Ultimately, the majority jettisons a framework carefully constructed over the years to ensure lay persons are fairly informed about a process that can be confusing, bewildering, *239 and frustrating for them. The majority rule strikes at eases, like the instant one, in which the public has the most contact with our courts. The result for the public is a landscape bereft of guideposts, where words do not mean what they say; where a series of acts is actually a single act; and where one must guess at what conduct he or she is accused, and for what conduct one may have been convicted. In sum, the majority’s test abrogates the guarantee to the people of the right to be informed of the nature and the cause of the government’s accusation. Haw. Const, art. I, § 14.

. HRS § 711-1106(1 )(a) provides that:
(1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
(a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]
(Emphasis added.)

. See State v. Codiamat, No. CAAP-11-0000540, 2012 WL 3113898, at *1 (App. July 21, 2012) (SDO). The Summary Disposition Order was filed by Associate Judges Katherine G. Leonard and Lisa M. Ginoza, with Chief Judge Craig H. Nakamura concurring.

. In the State’s opening brief to the ICA, it stated, "the only act being charged here is, essentially, an offensive touching.” (internal quotation marks omitted) (brackets omitted). At oral argument before this court, the State admitted that it could have charged Codiamat using only the language in the first clause of HRS § 711-1106(l)(a). See Oral Argument at 7:00-7:30, State v. Codiamat, No. SCWC-11-0000540, available at http://state.hi.us/jud/oa/12/SCOA_112912_ 1 l_540.mp3.

. The Honorable Clarence A. Pacarro presided.

. McCarthy is an unpublished ICA memorandum opinion in which the defendant was charged with HRS § 71 l-1106(lXb). 2010 WL 3433722, at *1. HRS § 711-1106(l)(b) provides:
*230 (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
[[Image here]]
(b) Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or anotherj.]
The complaint that was challenged in McCarthy stated:
On or about the 4th day of October, 2006, in the City and County of Honolulu, State of Hawai'i, [the defendant], with intent to harass, annoy, or alarm [complainant], did insult, taunt, or challenge [complainant] in a manner likely to provoke an immediate violent response or that would cause [complainant] to reasonably believe that [the defendant] intended to cause bodily injury to him or another or damage to the property of [complainant] or another, thereby committing the offense of Harassment in violation of Section 711-1106(1 )(b) of the [HRS],
Id. (emphases added). The defendant argued that the complaint was insufficient because it charged the results of the conduct element in the disjunctive ("or”) rather than in the conjunctive ("and”). Id. at *2. The ICA, citing this court’s precedent in Lemalu and Jendrusch, held that " '[p]hrasing a complaint in the disjunctive would not provide sufficient notice as it would leave the defendant uncertain as to which of the acts charged was being relied upon [as the basis for the] accusation against him[,]’ ” and thus, the charge against the defendant was improperly pled in the disjunctive. Id. at *4 (quoting Lemalu, 72 Haw. at 134, 809 P.2d at 444 (internal quotation marks and citation omitted)).

. HRS § 1-18 (1993), dealing with construction of 6 laws, states that "[e]ach of the terms 'or' and 'and', has the meaning of the other or both.” This would not be apparent to a defendant, however, from the face of a charging instrument, and thus the ordinary meaning of "or” rather than its construction under HRS § 1-18, applies. See Sorenson, 44 Haw. at 604, 359 P.2d at 291 ("Although it is true that under proper circumstances ‘or’ may mean 'and', the common usage of the word ‘or’ is as a disjunctive, indicating an alternative.”).

. If the two clauses in HRS § 711-1106(l)(a) are synonyms, then the statute would include sur-plusage as to all or part of the second clause. In *232 this case, the State pled a violation of the second part, but admits that it was surplusage. The State nevertheless asserts that "the presence of surplusage does not render the charge 'fatally defective.’ " In support, the State cites to Hawaii Rules of Penal Procedure (HRPP) Rule 7(e), which states that "[t]he court, on motion or agreement of the defendant, may strike surplus-age from the charge." However, this proposition violates the "cardinal rule of statutory construction!,]” State v. Kaakimdka, 84 Hawai'i 280, 289-90, 933 P.2d 617, 626-27 (1997), as noted above, requiring that courts "give effect to all parts of a statute[.]” Id.; Dejetley, 122 Hawai'i at 263, 226 P.3d at 433.

. The State alleges that Pesentheiner is inapplicable because in that case, the court engaged in statutory interpretation of HRS §711-1106(1 )(a), rather than considering how a person of common understanding would view the words in the statute. However, as discussed infra, in this instance, the statutory interpretation of the statute that would give effect to the legislature’s intent is consistent with how a person of common understanding would view the charge in the instant case.

. Chief Judge Nakamura concurred to the ICA’s SDO, stating that although the majority’s result was mandated under Hawai'i case law, he disagreed with that case law because, in his view, charging in the disjunctive "or” provides fair notice the defendants. Codiamat, 2012 WL 3113898, at *5 (Nakamura, C.J., concurring). The State adopts this view in its Application, arguing that "any existing Hawai'i precedent that rejects pleading in the disjunctive in favor of pleading in either the conjunctive or conjunctive [and] disjunctive should be overturned because such precedent is inconsistent with the modern pleading practices already recognized here." As discussed infra, however, the disjunctive "or” provides less notice to defendants of the charges they must be prepared to meet.

. As the State stated at oral argument, the usual practice is to charge non-synonymous conduct from the same subsection of a statute as "and/ or.”

. See, e.g., Hirahara v. Tanaka, 87 Hawai'i 460, 464, 959 P.2d 830, 835 (1998) (stating that the term "best judgment” should be avoided in future medical malpractice jury instructions); Garringer v. State, 80 Hawai'i 327, 335, 909 P.2d 1142, 1150 (1996) ("In order to avoid this problem in future cases, the circuit court should instruct the jury, by special verdict interrogatories, to make any and all findings relevant to the imposition of enhanced sentences where the requisite aggravating circumstances are intrinsic to the commission of the crime charged.”); State v. Lau, 73 Haw. 259, 264, 831 P.2d 523, 526 (1992) ("In order to negate the unnecessary and time-consuming search of the record on appeal, we emphasize and reiterate our caveat ... that where sentencing alternatives are available, the sentencing court should state clearly on the record that such alternatives were considered.”).

. As noted, McCarthy was also an unpublished ICA opinion. The majority points out that despite its holding, the final footnote in McCarthy states that " '[t]he case law notwithstanding, it is not clear to us that phrasing the charge in the conjunctive provides any additional notice over the charge phrased in the disjunctive.’ ” Majority’s opinion at 222, 317 P.3d at 666 (quoting McCarthy, 2010 WL 3433722, at *4 n. 4). However, it is important to note that McCarthy recognized that charging in the disjunctive was not permitted under Hawai'i precedent, and held accordingly. Id. at *4. Thus, the final footnote is merely commentary without any legal effect. Further, as explained supra, charging in the conjunctive or conjunctive/disjunctive does provide additional notice to the defendant over charging in the disjunctive.

. As related supra, these include ejusdem gener-is, construction of the word "or” as indicating two alternatives, and the rule against treating statutory language as surplusage.

. The majority states that it agrees in part with Chief Judge Nakamura’s concurring opinion in the ICA case, that the use of the disjunctive "alerts the defendant that he or she must be prepared to defend against each of the charged alternatives.” Majority’s opinion at 226, 317 P.3d at 670. As noted, this ignores that the word "or” indicates to the lay defendant that he or she must prepare to defend against one of the acts, to the exclusion of the other. Further, the rationale from the ICA concurrence does not justify distinguishing between disjunctive charging of multiple subsections and disjunctive charging of multiple ways of committing an offense in the same subsection.